EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Luis Fernando Freire Ruiz de Val y otros<br><br>Peticionarios<br><br>v.<br><br>Raquel Morales Román<br><br>Recurrida<br><br>Pedro Antonio Hernández Nevárez<br><br>Recurrido | Certiorari<br><br>2024 TSPR 129<br><br>214 DPR \_\_\_ |

Número del Caso:  CC-2024-0244

Fecha:  6 de diciembre de 2024

Tribunal de Apelaciones:

    Panel III

Representantes legales de la parte peticionaria:

    Lcdo. Alfredo Fernández Martínez
    Lcdo. José M. Martínez Rivera

 Representantes legales de la parte recurrida:

    Lcda. Marta Figueroa Torres
    Lcda. Jessica A. Figueroa Arce

Materia: Procedimiento Civil – Si la falta de notificación de un recurso de apelación a un albacea priva de jurisdicción al Tribunal de Apelaciones para ejercer su facultad revisora.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Luis Fernando Freire Ruiz de Val y otros<br><br>Peticionarios<br><br>v.<br><br>Raquel Morales Román<br><br>Recurrida<br><br>Pedro Antonio Hernández Nevárez<br><br>Recurrido | CC-2024-244 | *Certiorari* |

El Juez Asociado Señor Feliberti Cintrón emitió la Opinión del Tribunal.

En San Juan, Puerto Rico, a 6 de diciembre de 2024.

Este caso nos brinda la oportunidad de determinar si, en la fase apelativa intermedia, la falta de notificación de un recurso de apelación a un albacea -a quien se incluyó como parte en el pleito, fue emplazado, se sometió a la jurisdicción del Tribunal de Primera Instancia y fue notificado de todos los dictámenes del foro primario- priva de jurisdicción al Tribunal de Apelaciones para ejercer su facultad revisora.

Específicamente, nos corresponde resolver si el foro apelativo intermedio actuó correctamente al proveer no ha lugar a una moción de desestimación que se fundamentaba en que el recurso de apelación presentado ante dicho tribunal no se perfeccionó adecuadamente, ya que no fue notificado

a una de las partes dentro del término reglamentario dispuesto para ello y tampoco se acreditó la existencia de justa causa para su incumplimiento. En esa línea, debemos decidir si el Tribunal de Apelaciones erró al asumir jurisdicción sobre el recurso de apelación y al continuar la tramitación del mismo.

Por las razones que se esbozan más adelante, resolvemos que el foro apelativo intermedio erró al denegar la mencionada moción de desestimación y al asumir jurisdicción sobre el recurso de apelación en cuestión, a pesar de que éste no se perfeccionó adecuadamente. Consecuentemente, procede revocar la *Resolución* recurrida y desestimar el recurso de apelación presentado ante el Tribunal de Apelaciones por falta de jurisdicción. Así las cosas, se devuelve el caso al foro primario para la continuación de los procedimientos.

Veamos los hechos que dieron origen al asunto ante nuestra consideración.

**I**

El litigio de referencia comenzó el 27 de agosto de 2020 cuando Luis Fernando, Gloriamalia y Magda, todos de apellidos Freire Ruiz de Val, por sí y como miembros de la Sucesión Freire Meléndez y de la Sucesión Ruiz de Val (peticionarios) presentaron ante el foro de primera instancia una *Demanda* sobre nulidad de testamento, nulidad o revocación del cargo de albacea y cartas testamentarias, administración judicial, liquidación y división

comunitaria, y daños y perjuicios en contra de la Sra. Raquel Morales Román (recurrida).[1]

En síntesis, los peticionarios alegaron -entre otros asuntos- que su padre, el Sr. Luis Fernando Freire Meléndez (causante), era ciego y que no se observaron las formalidades del Art. 21 de la Ley Notarial de 1987, 4 LPRA sec. 2039, aplicables en aquellos casos en los que un otorgante es ciego, por lo que esto conllevaba la nulidad de los testamentos otorgados. El 2 de octubre de 2020, la recurrida presentó su *Contestación a la Demanda*, en la cual solicitó que se proveyera no ha lugar a la reclamación presentada y se impusiera el pago de honorarios de abogado.

El 14 de diciembre de 2021, los peticionarios presentaron una *Demanda enmendada* a los únicos fines de traer al pleito a los otros albaceas nombrados en los testamentos impugnados, a saber: Julio Ramón Guzmán Freire, Julio Enrique Guzmán Carcache y Pedro Antonio Hernández Nevárez (albacea Hernández Nevárez). Esto ocurrió a raíz de que, el 6 de octubre de 2021, la recurrida presentó una *Moción sobre desestimación parcial* en la que solicitó al foro primario que desestimara la causa de acción de nulidad de testamento por falta de partes indispensables,

---

[1] La Sra. Raquel Morales Román (recurrida) es la viuda del Sr. Luis Fernando Freire Meléndez (causante), quien falleció el 21 de abril de 2019. Véase *Demanda*, Apéndice del *certiorari*, pág. 37.

específicamente porque no se habían incluido en el litigio a esos tres albaceas.[2]

Mediante una *Resolución* del 15 de diciembre de 2021, el foro de primera instancia: (1) aceptó la *Demanda enmendada* presentada por los peticionarios; (2) ordenó que se expidieran los emplazamientos relacionados con los tres albaceas incluidos como partes en el pleito, y (3) declaró académico el planteamiento de la recurrida en cuanto a la falta de partes indispensables.[3] Al mes siguiente, el 21 de enero de 2022, la recurrida presentó su *Contestación a la Demanda enmendada* y, a su vez, reconvino en contra de los peticionarios.

Más adelante, el 20 de octubre de 2022, el foro primario celebró una vista sobre el estado de los procedimientos y citó a las partes a una vista evidenciaria para los días 17 y 18 de enero de 2023. Celebrada la vista, el foro de primera instancia recibió prueba documental, así como prueba pericial consistente en el testimonio del Dr. Joseph P. Campbell (oftalmólogo) por parte de los peticionarios y el Lcdo. Ángel Antonio Colón (ante quien se otorgó el último testamento del causante el 17 de junio de 2015) por parte de la recurrida.

---

[2] En particular, el 6 de octubre de 2021, la recurrida presentó ante el foro de primera instancia una *Moción sobre desestimación parcial*, en la que expresó que "[e]n toda demanda donde se impugna la validez del testamento (en este caso de tres testamentos en un solo caso), el albacea (los albaceas) son partes indispensables". Véase *Moción sobre desestimación parcial*, Apéndice del *certiorari*, pág. 389.

[3] El archivo en autos de copia de la *Resolución* fue el 16 de diciembre de 2021. Véase *Resolución*, Apéndice del *certiorari*, pág. 465.

Así las cosas, el 28 de noviembre de 2023, el foro primario emitió una *Sentencia parcial*, en la que declaró con lugar la solicitud de los peticionarios. En particular, dispuso lo siguiente:

1. Se resuelve que el testador, Luis Freire Meléndez, era ciego al momento de otorgar los testamentos de los años 2006, 2013 y 2015, por lo que debió designar un testigo instrumental y, al no hacerlo, vició de nulidad sus propios testamentos.

2. Se declaran nulos los referidos testamentos y se ordena a los demandantes […] proceder a presentar un caso por separado de petición de declaratoria de herederos.

3. Se revoca la designación de la codemandada Raquel Morales Román como albacea testamentaria y se le ordena someter en 30 días el Informe Final de su gestión en el caso *Ex [p]arte* Raquel Morales Román, SJ2019CV07273.

4. El presente caso permanecerá paralizado hasta que se nos notifique la Resolución de Declaratoria de Herederos para que podamos proseguir con las restantes causas de acción contenidas en la demanda: nombramiento de administrador judicial, la(s) liquidación(es) hereditaria(s) y daños y perjuicios.[4]

Oportunamente, el 13 de diciembre de 2023, la recurrida presentó una *Moción de reconsideración de sentencia parcial* y los peticionarios replicaron el 2 de enero de 2024. Examinadas las comparecencias, el 15 de enero de 2024, el foro de primera instancia emitió una *Resolución* mediante la cual declaró no ha lugar la solicitud de reconsideración presentada por la recurrida.[5] Inconforme con la decisión del foro primario, el 20 de febrero de 2024, la recurrida

---

[4]    Véase *Sentencia parcial*, Apéndice del *certiorari*, pág. 231.

[5]    El archivo en autos de copia de la *Resolución* fue el 18 de enero de 2024.

presentó un recurso de apelación ante el Tribunal de Apelaciones.

El 20 de marzo de 2024, los peticionarios presentaron una *Moción de desestimación* ante el foro apelativo intermedio, en la que plantearon que el recurso instado por la aquí recurrida presentaba una falta que privaba de jurisdicción a dicho tribunal y que, por consiguiente, procedía su desestimación. En particular, indicaron que el recurso de apelación no fue notificado al albacea Hernández Nevárez, quien figuraba como parte en el pleito desde diciembre de 2021. Al respecto, expresaron que la recurrida no cumplió con el deber de notificarle a éste el recurso en el término reglamentario y tampoco presentó una moción oportunamente para justificar la causa de su incumplimiento.

Mientras, el 25 de marzo de 2024, la recurrida presentó ante el Tribunal de Apelaciones su *Oposición a moción de desestimación*. En ésta argumentó que desde marzo de 2022 el albacea Hernández Nevárez ya no era parte en el pleito. Para sustentar su posición, expuso que "[q]uizás por inadvertencia o por no entenderlo necesario, el [foro de primera instancia] no emitió dictamen posterior sobre el asunto[,] pero ya lo había resuelto: que se concedería la salida solicitada por el [albacea Hernández Nevárez] si nadie se oponía".[6] Añadió que "el [foro primario] sacó al

---

[6] Véase *Oposición a moción de desestimación,* Apéndice del *certiorari*, pág. 491.

[albacea Hernández Nevárez] de este pleito de forma muy particular y no puede la parte apelada, quien expresamente accedió a que se relevara al [albacea Hernández Nevárez] del pleito, alegar ahora que éste está en el pleito sólo por una alegada inadvertencia del [foro de primera instancia] que no emitió sentencia posteriormente para darle de baja del sistema de notificaciones del tribunal".[7]

Además, en su *Oposición a moción de desestimación*, la recurrida expresó que el **21 de marzo de 2024** notificó el recurso de apelación al albacea Hernández Nevárez por correo certificado con acuse de recibo y recalcó que la falta de notificación del recurso se debió a que éste no es parte en el pleito "por las circunstancias particulares en las que el tribunal de [primera] instancia lo relevó tras éste solicitarlo y ninguna parte oponerse",[8] por lo que esas circunstancias específicas acreditaban que "exist[ía] justa causa para que, de entender [el] foro apelativo [intermedio] que procedía notificarle al [albacea Hernández Nevárez], se haya hecho con posterioridad a la presentación de la apelación".[9]

Ante esto, el mismo 25 de marzo de 2024, los peticionarios replicaron a través de una *Moción en torno a Oposición a moción de desestimación*. En lo pertinente,

---

[7] Véase *Oposición a moción de desestimación,* Apéndice del *certiorari*, págs. 491-492.

[8] Íd., págs. 492-493.

[9] Íd., pág. 493.

enfatizaron que, según solicitó la recurrida al foro primario bajo el argumento de parte indispensable, los tres albaceas -incluyendo al albacea Hernández Nevárez- fueron emplazados, traídos al pleito como partes con interés y comparecieron ante el foro de primera instancia. Asimismo, expresaron que, mediante una *Sentencia parcial* del 25 de marzo de 2022, el foro primario aceptó las renuncias de los albaceas Julio Ramón Guzmán Freire y Julio Enrique Guzmán Carcache, y los relevó del litigio.[10] No obstante, según señalan, eso no ha ocurrido en cuanto al albacea Hernández Nevárez, por lo que éste es parte del caso y se encuentra bajo la jurisdicción del tribunal.[11]

---

[10]   El archivo en autos de copia de la *Sentencia parcial* fue el 28 de marzo de 2022.   Véase *Sentencia parcial*, Apéndice del *certiorari*, pág. 486.

[11]   El 16 de marzo de 2022, el Sr. Pedro Antonio Hernández Nevárez (albacea Hernández Nevárez) presentó ante el foro primario una *Contestación a demanda enmendada* en la cual informó que no podía ejercer el cargo de albacea, por lo que se veía obligado a renunciar al mismo.   Éste fundamentó su solicitud en que ejercía como médico pediatra y trabajaba los siete (7) días de la semana.   Añadió que "carece de experiencia en el tema de herencias, contabilidad y derecho, para poder ejercer las funciones de albacea eficientemente".   Véase *Contestación a demanda enmendada,* Apéndice del *certiorari*, pág. 484.

Ante esto, el 25 de marzo de 2022, el foro de primera instancia emitió una *Orden* en relación con el escrito presentado por el albacea Hernández Nevárez.   El archivo en autos de copia de dicha *Orden* fue el 28 de marzo de 2022.   En lo pertinente, el foro primario dispuso lo siguiente:

> **Enter[a]da.   Exprésense las demás partes en 10 d[í]as bajo apercibimiento [de] que se concederá el remedio solicitado y se dictará sentencia desestimando contra dicha parte.** (Negrilla suplida).   Véase *Orden*, Apéndice del *certiorari*, pág. 487.

Mediante una *Resolución* emitida el 10 de abril de 2024,[12] el Tribunal de Apelaciones dispuso lo siguiente respecto a las mociones presentadas por las partes:

> 1. ***Moción de [d]esestimación*, presentada por la parte apelada el 20 de marzo de 2024, no ha lugar.**
>
> 2. *Oposición a Moción de [d]esestimación*, presentada por la parte apelante el 25 de marzo de 2024, ha lugar.
>
> 3. *Moción en torno a Oposición a [m]oción de [d]esestimación*, presentada el 25 de marzo de 2024, se ordena su desglose. (Negrilla suplida).[13]

Posteriormente, el 17 de abril de 2024, el foro apelativo intermedio emitió una *Resolución* en la que expuso que, debido a la naturaleza de los asuntos planteados, estaría designando a varias instituciones profesionales como *Amicus curiae*, a saber: el Colegio de Registradores de la Propiedad de Puerto Rico, el Colegio Notarial de Puerto Rico y el Instituto del Notariado Puertorriqueño. A dichas instituciones se les concedió el término de treinta (30) días, contado a partir de la notificación de la *Resolución*, para que presentaran sus alegatos.

Insatisfechos con la *Resolución* del 10 de abril de 2024 emitida por el Tribunal de Apelaciones y notificada el 12 de abril de 2024 referente a la denegatoria a su *Moción de desestimación*, el 24 de abril de 2024 los peticionarios presentaron ante este Foro una *Moción de orden provisional*

---

[12] El archivo en autos de copia de la *Resolución* fue el 12 de abril de 2024.

[13] Véase *Resolución*, Apéndice del *certiorari*, pág. 2.

*en auxilio de jurisdicción* junto a su *Petición de certiorari.* En síntesis, argumentaron que la recurrida no notificó su recurso de apelación a una de las partes del pleito -en este caso al albacea Hernández Nevárez- en el término reglamentario dispuesto para ello y tampoco estableció la existencia de justa causa para notificarle a dicha parte **treinta (30) días después de la fecha de presentación del recurso**, por lo cual el foro apelativo intermedio carecía de jurisdicción para atenderlo. Además, adujeron que procedía la paralización de los procedimientos pendientes ante el Tribunal de Apelaciones hasta tanto se atendiera su recurso de *certiorari*, pues, incluso, dicho foro apelativo requirió -luego de la *Resolución* recurrida- la intervención de varias instituciones en calidad de *Amicus curiae.* En vista de lo anterior, los peticionarios solicitaron la paralización de los asuntos pendientes ante el Tribunal de Apelaciones, la expedición del auto de *certiorari*, la revocación de la decisión recurrida y la desestimación del recurso de apelación presentado por la recurrida por falta de jurisdicción.

Específicamente, en su recurso de *certiorari*, los peticionarios señalaron los errores siguientes:

> **Primer Error:** Erró el Tribunal de Apelaciones al negarse a desestimar un recurso de apelación que no se perfeccionó, pues la apelante no notificó oportunamente su recurso a una de las partes del pleito.

> **Segundo Error:** Erró el Tribunal de Apelaciones al asumir jurisdicción sobre el recurso de apelación cuando la promovente no logró establecer la justa

causa que excusaría su omisión en notificarlo oportunamente a una de las partes del caso.

**Tercer Error**: Erró el Tribunal de Apelaciones al ordenar el desglose de una moción presentada por una de las partes y así excluir su constancia en el expediente judicial.

Así las cosas, el 30 de abril de 2024, emitimos una *Resolución* mediante la cual declaramos ha lugar la *Moción de orden provisional en auxilio de jurisdicción* presentada por los peticionarios y, por consiguiente, paralizamos los procedimientos relacionados a este asunto hasta tanto este Tribunal dispusiera otra cosa. Asimismo, ordenamos a que, en el término de diez (10) días, contado a partir de la notificación de nuestra *Resolución*, la recurrida mostrara causa por la cual no debíamos expedir el auto de *certiorari* solicitado y revocar la determinación del foro apelativo intermedio.[14]

En cumplimiento con lo ordenado, el 10 de mayo de 2024 la recurrida presentó su *Moción en oposición a expedición de auto de certiorari*. En resumen, argumentó que el Tribunal de Apelaciones resolvió correctamente al denegar la solicitud de desestimación por falta de jurisdicción presentada por los aquí peticionarios y al continuar con el trámite del recurso ante sí. Reiteró que el albacea Hernández Nevárez no es parte en el pleito y que "de

---

[14] El inciso (a) de la Regla 46 del Reglamento del Tribunal Supremo, 4 LPRA Ap. XXI-B, R. 46(a), dispone que "[e]n cualquier momento luego de presentada una petición para que se expida un auto, el tribunal podrá emitir una orden a las partes para que muestren causa por la cual no deba expedirse el auto y revocarse la sentencia o modificarse en la forma indicada en la orden".

considerarse que lo fuera, hubo justa causa para que se le notificara tardíamente".[15] Al respecto, señaló lo siguiente:

> Más a[ú]n, si este Honorable Tribunal Supremo entendiera que a pesar de las circunstancias específicas en las que el tribunal de instancia sacó al [albacea Hernández Nevárez] del caso había que considerarlo parte, entenderá que precisamente esas circunstancias específicas y la forma particular en la que el foro de instancia manejó la solicitud del [albacea Hernández Nevárez] para que se le sacara del caso constituyen justa causa para que se le haya notificado la Apelación posteriormente.[16]

Evaluadas las posturas de las partes, expedimos el auto de *certiorari* solicitado y procedemos a exponer el derecho aplicable sin trámite ulterior en conformidad con la Regla 50 del Reglamento de este Tribunal, 4 LPRA Ap. XXI-B, R. 50.

## II

**A. La figura del albacea: consideraciones generales sobre sus facultades, la aceptación del cargo y su renuncia**

**El albacea es aquella persona de confianza del testador**, llamada por éste para cumplir y ejecutar las disposiciones del testamento, aun contra la voluntad de los interesados. E. González Tejera, *Derecho de sucesiones*, San Juan, Ed. UPR, 2001, T. II, pág. 536. Asimismo, se ha definido como la persona nombrada por el testador con la particular misión de proveer a la ejecución del testamento. L. Díez-Picazo y A. Gullón, *Sistema de*

---

[15] Véase *Moción en oposición a expedición de auto de certiorari,* pág. 5.

[16] Íd., pág. 3.

*derecho civil: derecho de sucesiones*, 12ma ed., Madrid, Ed. Tecnos, 2017, T. II, Vol. IV, pág. 134.

Por su parte, el albaceazgo se define como "la institución jurídica por cuya virtud una o más personas, nombradas generalmente por el testador, son encargadas de vigilar o de dar cumplimiento a lo ordenado en el testamento, asegurando así la efectividad de sus disposiciones". J. R. Vélez Torres, *Derecho de sucesiones*, Madrid, 1974, pág. 182.

En conformidad con el Art. 823 del derogado Código Civil de 1930, 31 LPRA ant. sec. 2520 (ed. 2015), las facultades de un albacea serán todas aquellas que expresamente le haya conferido el testador y que no sean contrarias a las leyes.[17] En caso de que el testador no determine específicamente las facultades del albacea, el Art. 824 del Código Civil de 1930, 31 LPRA ant. sec. 2521 (ed. 2015) dispone, entre otras, la facultad de "[v]igilar sobre la ejecución de todo lo demás ordenado en el testamento, y sostener, siendo justo, su validez en juicio y fuera de él".[18]

---

[17]  Nos referimos al Código Civil de 1930, el cual estuvo vigente cuando el causante otorgó los testamentos que son objeto del caso de epígrafe.  En igual término se refirió el foro de primera instancia en su *Sentencia parcial* del 28 de noviembre de 2023.  Véase *Sentencia parcial*, Apéndice del *certiorari*, pág. 228.

[18]  Valga señalar que, según consta en el expediente, en el presente caso el causante sí incluyó esta facultad como parte de las facultades testamentarias.  En lo pertinente, dispuso lo siguiente:

(A) Ostentar la representación del caudal ante los tribunales, agencias y funcionarios administrativos donde fuere ello menester, pudiendo al efecto demandar por las acciones que fuere necesario, entablar litigios e interponer instancias de cualquier género y defender el caudal de

Al abordar el tema sobre la facultad del albacea de vigilar la ejecución del testamento y defenderlo, el tratadista González Tejera menciona que **se debe tener presente que en toda demanda donde se impugne la validez del testamento, el albacea es parte indispensable.** E. González Tejera, *op. cit.*, pág. 573. De igual forma, al discutir la facultad que tiene el albacea de litigar sobre asuntos que competen a la herencia, el profesor González Tejera expresa lo siguiente:

> [L]a facultad del albacea para litigar incluye no sólo los pleitos en los que se ataca la validez del testamento o de alguna de sus disposiciones, sino **también para iniciar o intervenir en cualquier procedimiento judicial cuya sentencia pueda menoscabar su deber de velar por que se cumpla la voluntad del testador.** El albacea tiene facultad, incluso, para demandar a los herederos que se aparten de lo que dispuso lícitamente el testador en el testamento. (Citas omitidas y negrilla suplida).[19]

Asimismo, el Art. 820 del Código Civil de 1930, 31 LPRA ant. sec. 2517 (ed. 2015), establece que el albaceazgo es un cargo voluntario. Una vez aceptado el cargo, el albacea se obliga a desempeñarlo fielmente y ello requiere la diligencia de un buen padre de familia. (Citas omitidas). González Muñiz, *Ex parte*, 128 DPR 565, 572 (1991).

---

cualquier clase de acciones, demandas o reclamaciones que se entablaren o establecieren en contra de dicho caudal;

(B) Sostener y defender la validez de este testamento y vigilar por la ejecución de todo lo ordenado por el TESTADOR[.] Véase *Escritura Núm. 3 del 30 de marzo de 2006 sobre Testamento abierto*, Apéndice del *certiorari*, págs. 52-53.

[19] Véase E. González Tejera, *Derecho de sucesiones,* San Juan, Ed. UPR, 2001, T. II, pág. 580.

Por su parte, entre las razones dispuestas en el Art. 832 del Código Civil de 1930, 31 LPRA ant. sec. 2529 (ed. 2015) para la terminación del albaceazgo está la renuncia del albacea. **Al respecto, el tratadista González Tejera indica que dicha renuncia debe ser "justificada y aprobada por el tribunal"**. (Negrilla suplida). E. González Tejera, *op. cit.*, pág. 597. Sobre esto, el Art. 821 del Código Civil de 1930, 31 LPRA ant. sec. 2518 (ed. 2015), dispone que el albacea puede renunciar al cargo "alegando causa justa al prudente arbitrio del Tribunal de Primera Instancia". Véase, además, Mollfulleda v. Ramos, 3 DPR 251, 257 (1903). Refiriéndose a lo resuelto en González Muñiz, *Ex parte*, *supra*, el profesor González Tejera nos indica que "la justa causa para renunciar se da en función de las obligaciones del funcionario y de su interacción con los intereses sociales que protege el instituto del albaceazgo". E. González Tejera, *op. cit.*, pág. 551.

Este Tribunal ha expresado que el peso de la prueba para demostrar la existencia de justa causa recae sobre el albacea. González Muñiz, *Ex parte*, *supra*, pág. 574. A su vez, señalamos que basta con que se alegue justa causa sin necesidad de especificar el motivo. No obstante, una vez se cuestiona la existencia de causa justificada, el albacea viene obligado a probar el hecho en que se fundamenta su renuncia. Íd.

De igual manera, hemos manifestado que la determinación de justa causa que corresponde al foro primario no es una tarea sencilla, pues "el Código Civil deja de tipificar las causales que eximen al albacea de cumplir sus obligaciones sin consecuencia ulterior". González Muñiz, *Ex parte*, *supra*, pág. 574. Ante esto, expresamos que la existencia y la determinación de justa causa en este contexto "debe hacerse considerando la presencia de buena fe, las obligaciones del albacea, el testamento, el caudal y, claro está, los derechos de los herederos". Íd. Evidentemente, la existencia de cualquier causal está subordinada a la ausencia de culpa o negligencia en el cumplimiento de los deberes inherentes al cargo. Íd., pág. 575.

**B. La Regla 42.3 de Procedimiento Civil: sentencias sobre reclamaciones o partes múltiples**

La Regla 42.3 de Procedimiento Civil, 32 LPRA Ap. V, permite que en los casos en que se atiendan reclamaciones o partes múltiples, el tribunal dicte sentencia en torno a una u otra de las reclamaciones sin necesidad de esperar a que esté en condición de dictar sentencia sobre todas las reclamaciones. R. Hernández Colón, *Derecho Procesal Civil*, 6ta ed., San Juan, LexisNexis de Puerto Rico, Inc., 2017, pág. 424. El propósito de esta regla es evitar la posible injusticia que causaría una dilación en emitir la sentencia respecto a una reclamación o alguna parte si se esperara hasta la adjudicación total en torno a todas las reclamaciones o todas las partes. Íd.

En particular, la Regla 42.3 de Procedimiento Civil, *supra*, dispone lo siguiente:

> Cuando un pleito comprenda más de una reclamación, ya sea mediante demanda, reconvención, demanda contra coparte o demanda contra tercero, o figuren en él partes múltiples, el tribunal podrá dictar sentencia final en cuanto a una o más de las reclamaciones o partes sin disponer de la totalidad del pleito, siempre que concluya expresamente que no existe razón para posponer que se dicte sentencia sobre tales reclamaciones hasta la resolución total del pleito, y siempre que ordene expresamente que se registre la sentencia.
>
> Cuando se haga la referida conclusión y orden expresa, la sentencia parcial dictada será final para todos los fines en cuanto a las reclamaciones o los derechos y las obligaciones en ella adjudicada, y una vez sea registrada y se archive en autos copia de su notificación, comenzarán a transcurrir en lo que a ella respecta los términos dispuestos en las Reglas 43.1, 47, 48 y 52.2.

Así pues, cuando el tribunal dicte sentencia para adjudicar alguna de las reclamaciones o en cuanto a alguna parte en el litigio, dicho foro deberá: (1) concluir expresamente que no existe razón para posponer dictar sentencia hasta la resolución final del pleito, y (2) ordenar expresamente que se registre la sentencia. Johnson & Johnson v. Mun. de San Juan, 172 DPR 840, 849 (2007). De esa manera, el tribunal le imparte carácter de finalidad a la sentencia parcial que se dicte. R. Hernández Colón, *op. cit.*, pág. 424.

## C. El perfeccionamiento de los recursos apelativos ante el Tribunal de Apelaciones

En nuestro ordenamiento jurídico, existe un conjunto de normas que rige la práctica procesal apelativa. En esencia, esto implica que aun cuando haya derecho a

apelar, las reglas en cuanto al perfeccionamiento de los recursos apelativos deben cumplirse rigurosamente y, claro está, su cumplimiento no puede estar al arbitrio de las partes o sus abogados. Pérez Soto v. Cantera Pérez, Inc. et al., 188 DPR 98, 104-105 (2013); Hernández Maldonado v. Taco Maker, 181 DPR 281, 290 (2011). Véase, además, Soto Pino v. Uno Radio Group, 189 DPR 84, 90-91 (2013).

Asimismo, la apelación no es automática, sino que presupone una notificación, un diligenciamiento y su perfeccionamiento. Morán v. Martí, 165 DPR 356, 367 (2005). Como parte de los requisitos para perfeccionar el recurso de apelación está la presentación oportuna del recurso en la Secretaría del Tribunal de Apelaciones y **su notificación** a las partes; ambos inciden en la jurisdicción del tribunal. Pérez Soto v. Cantera Pérez, Inc. et al., supra, pág. 105. Así pues, la parte apelante tiene la obligación de perfeccionar su recurso de acuerdo con lo que exige la ley y el Reglamento del Tribunal de Apelaciones, y de esa manera colocar al foro apelativo intermedio en posición de poder revisar al foro de primera instancia. Morán v. Martí, supra, pág. 367.

Según hemos expresado, el requisito de notificación se ha incorporado a la práctica legal con el objetivo de salvaguardar el debido proceso de ley de las partes ante la presentación de un recurso apelativo. Pérez Soto v. Cantera Pérez, Inc. et al., supra, págs. 105-106. Al respecto, este Tribunal ha indicado que el requisito de

notificación es imperativo, ya que coloca a la parte contraria en conocimiento del recurso que solicita la revisión de una determinación de un tribunal de menor jerarquía. Soto Pino v. Uno Radio Group, *supra*, pág. 90. De igual forma, hemos señalado que el cumplimiento con dicho requisito se refiere sólo a que la notificación sea realizada dentro del término provisto por la regla y no depende del mecanismo utilizado para notificar. Pérez Soto v. Cantera Pérez, Inc. *et al.*, *supra*, pág. 107.

Además, este Tribunal ha indicado que "[p]ara el perfeccionamiento adecuado de un recurso presentado ante el foro apelativo intermedio es necesaria la oportuna presentación y **la notificación del escrito a las partes apeladas**". (Énfasis suprimido y negrilla suplida). González Pagán v. SLG Moret-Brunet, 202 DPR 1062, 1070-1071 (2019). De igual manera, expusimos que "[l]a falta de oportuna notificación a **todas las partes** en el pleito conlleva la desestimación del recurso de apelación". (Énfasis suprimido y negrilla suplida). Íd., pág. 1071. A raíz de esto, enfatizamos que el recurso que no se notifica a **todas las partes** provoca que se prive de jurisdicción al tribunal para ejercer su facultad revisora. Íd., págs. 1071-1072.

La práctica procesal apelativa requiere y ordena que se cumpla con cada uno de los requisitos procesales que se establecen en las Reglas de Procedimiento Civil y el Reglamento del Tribunal de Apelaciones, pues dichos

requisitos le imparten certeza y orden a los procesos ante un foro apelativo y, a la vez, facilita la revisión del foro primario. Morán v. Martí, *supra*, pág. 368.

Así, el cumplimiento con las reglas que rigen el perfeccionamiento de los recursos apelativos configura una normativa necesaria para que se coloque a los tribunales apelativos en posición de decidir correctamente los casos, ya que se cuenta con un expediente completo y claro de la controversia que tienen ante sí. Soto Pino v. Uno Radio Group, *supra*, pág. 90.

**D. La Regla 52.2(a) de Procedimiento Civil y la Regla 13 del Reglamento del Tribunal de Apelaciones: la presentación de la apelación y su notificación**

La Regla 52.2(a) de Procedimiento Civil, 32 LPRA Ap. V, dispone que la apelación para revisar una sentencia del foro de primera instancia se presentará ante el Tribunal de Apelaciones dentro del plazo jurisdiccional de treinta (30) días, contado desde el archivo en autos de una copia de la notificación de la sentencia apelada.

A su vez, la Regla 13(A) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 13(A), establece que las apelaciones contra sentencias dictadas en casos civiles por el foro primario se presentarán dentro del término jurisdiccional de treinta (30) días contados desde el archivo en autos de una copia de la notificación de la sentencia. Por su parte, y en lo que concierne al caso ante nuestra consideración, la Regla 13(B)(1) del mencionado Reglamento, 4 LPRA Ap. XXII-B, R. 13(B)(1),

establece que "[l]a parte apelante **notificará el recurso apelativo y los apéndices dentro del término dispuesto para la presentación del recurso**, siendo éste un término de estricto cumplimiento". (Negrilla suplida). Íd.

En síntesis, la Regla 13 del Reglamento del Tribunal de Apelaciones, *supra*, tiene como objetivo que haya constancia de que se realizó la notificación a las partes de manera tal que se eviten controversias y litigios secundarios relacionados con el cumplimiento del requisito de notificación. Pérez Soto v. Cantera Pérez, Inc. *et al*., *supra*, pág. 107.

**E. El término de cumplimiento estricto y la acreditación de justa causa**

El periodo para cumplir con la notificación del recurso a las partes, así como al foro apelado, se clasifica como un término de cumplimiento estricto, por lo que "cualquier desviación, tardanza o dilación tiene que justificarse debidamente, al momento de acreditar tal notificación al foro apelativo, pues de no mediar justa causa el recurso podría desestimarse". Véase G. Coll Martí y N. Jiménez Velázquez, *Práctica Apelativa*, en *Perspectivas en la práctica apelativa: 25 años del Tribunal de Apelaciones de Puerto Rico*, San Juan, Eds. SITUM, 2018, pág. 5.

Es norma reiterada que un término de cumplimiento estricto puede ser prorrogado por los tribunales, pero para esto "generalmente se requiere que la parte que solicita la prórroga, o que actúa fuera de término, presente justa causa por la cual no puede cumplir con el término

establecido". Soto Pino v. Uno Radio Group, *supra*, pág. 92.

Hemos manifestado que los tribunales pueden eximir a una parte del requisito de observar fielmente un término de cumplimiento estricto, si están presentes estas dos condiciones: (1) que en efecto exista justa causa para la dilación, y (2) que la parte le demuestre detalladamente al tribunal las bases razonables que tiene para la dilación; esto es, que la parte interesada acredite de manera adecuada la justa causa aludida. Rivera Marcucci *et al*. v. Suiza Dairy, 196 DPR 157, 171 (2016); Soto Pino v. Uno Radio Group, *supra*, pág. 93.[20] En ausencia de estas circunstancias específicas, el tribunal carece de discreción para prorrogar el término y, por consiguiente, acoger el recurso apelativo ante su consideración. S.L.G. Szendrey-Ramos v. F. Castillo, 169 DPR 873, 882 (2007).

Claro está, "no es con vaguedades, excusas o planteamientos estereotipados que se cumple con el requisito de justa causa, sino con explicaciones concretas y particulares, debidamente evidenciadas, que le permitan al tribunal concluir que la tardanza o demora ocurrió razonablemente, por circunstancias especiales". García Ramis v. Serrallés, *supra*, pág. 254; Arriaga v. F.S.E., *supra*, pág. 132. Ciertamente se trastocaría nuestro

---

[20] Véanse, además: García Ramis v. Serrallés, 171 DPR 250, 253 (2007); Arriaga v. F.S.E., 145 DPR 122, 132 (1998).

ordenamiento jurídico si se permite que la acreditación de justa causa se convierta en un juego de automatismo en el cual se expongan excusas genéricas, es decir carentes de detalles sobre las circunstancias particulares que provocaron la tardanza en el cumplimiento con el término. Soto Pino v. Uno Radio Group, *supra*, pág. 93.

Asimismo, al considerar si medió justa causa, no será determinante el hecho de que el acto tardío no causara perjuicio indebido a las otras partes, ya que, de ser así, los términos de cumplimiento estricto se reducirían a meros formalismos que pueden derrotarse fácilmente. Rosario Domínguez *et als*. v. E.L.A. *et al.*, 198 DPR 197, 211 (2017).

## F. La jurisdicción del tribunal

En múltiples instancias este Tribunal ha expresado que la jurisdicción es el poder o la autoridad que tiene un tribunal para considerar y decidir casos o controversias. Mun. Aguada v. W Const. y Recovery Finance, 2024 TSPR 69, 214 DPR ___ (2024); Torres Alvarado v. Madera Atiles, 202 DPR 495, 499-500 (2019). Por consiguiente, el primer factor a considerar en toda situación jurídica que se presente ante un foro adjudicativo es el aspecto jurisdiccional. Torres Alvarado v. Madera Atiles, *supra*, pág. 500. Esto se debe a que los tribunales tienen la responsabilidad indelegable de evaluar, en primera instancia, su propia jurisdicción, así como la del foro del cual procede el recurso ante su consideración. Íd.; Ruiz Camilo v. Trafon Group, Inc., 200 DPR 254, 268 (2018).

Es norma reiterada que los tribunales debemos ser celosos guardianes de nuestra jurisdicción, por lo que los asuntos relacionados con ésta son privilegiados y deben atenderse con prioridad. R&B Power. Inc. v. Junta de Subasta ASG, 2024 TSPR 25, 213 DPR ___ (2024); Allied Mgmt. Group v. Oriental Bank, 204 DPR 374, 386 (2020); Torres Alvarado v. Madera Atiles, *supra,* pág. 500. En consecuencia, al cuestionarse la jurisdicción de un tribunal por alguna de las partes o, incluso, cuando no haya sido planteado por éstas, dicho foro examinará y evaluará con rigurosidad el asunto jurisdiccional como parte de su deber ministerial, toda vez que éste incide directamente sobre la autoridad misma para adjudicar un caso o controversia. Mun. Aguada v. W Const. y Recovery Finance, *supra*; Ruiz Camilo v. Trafon Group, Inc., *supra,* pág. 268.

Así, cuando un tribunal determina que carece de jurisdicción para considerar el asunto presentado ante sí, procede la inmediata desestimación del recurso apelativo de acuerdo con lo ordenado por las leyes y los reglamentos para el perfeccionamiento de estos recursos. S.L.G. Szendrey-Ramos v. F. Castillo, *supra*, pág. 883. Por consiguiente, en caso de determinar que no posee jurisdicción, sólo resta así declararlo y desestimar la reclamación sin entrar en los méritos de la controversia. Mun. Aguada v. W Const. y Recovery Finance, *supra*; Mun. de San Sebastián v. QMC Telecom, 190 DPR 652, 660 (2014);

González v. Mayagüez Resort & Casino, 176 DPR 848, 856 (2009).

Por todo lo cual, conforme hemos establecido, la falta de jurisdicción no es susceptible de ser subsanada y las partes no pueden voluntariamente otorgarle jurisdicción al tribunal ni éste puede adjudicársela. JMG Investment v. ELA *et al.*, 203 DPR 708, 714 (2019); Fuentes Bonilla v. ELA *et al.,* 200 DPR 364, 372 (2018).

Conviene señalar que la Regla 83(B)(1) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 83(B)(1), dispone que una parte podrá solicitar en cualquier momento la desestimación de un recurso por razón de que el Tribunal de Apelaciones carece de jurisdicción.[21] Por su parte, la Regla 32(d) de nuestro Reglamento, 4 LPRA Ap. XXI-B, R. 32(d), establece que este Tribunal tendrá facultad para desestimar a iniciativa propia cualquier recurso por los motivos expuestos en el inciso (b) de la mencionada regla, entre estos que el tribunal carece de jurisdicción para atender el recurso.

Expuesta la normativa aplicable, pasemos a resolver la controversia ante nuestra consideración.

---

[21] Recuérdese que los peticionarios presentaron una *Moción de desestimación* ante el Tribunal de Apelaciones el 20 de marzo de 2024 en la que plantearon que el recurso instado por la recurrida presentaba una falta que privaba de jurisdicción a dicho foro y que, por consiguiente, procedía su desestimación. Véase *Moción de desestimación*, Apéndice del *certiorari*, págs. 362-372.

### III

Por estar estrechamente relacionados entre sí, discutiremos en conjunto los errores primero y segundo, pues con éstos se dispone de la controversia. En síntesis, los peticionarios plantean que el Tribunal de Apelaciones erró al denegar su *Moción de desestimación* del 20 de marzo de 2024 sustentada en que el recurso de apelación que presentó la recurrida ante dicho foro no fue notificado a una de las partes dentro del término reglamentario y tampoco acreditó la existencia de justa causa para excusar su dilación en notificarle a dicha parte **treinta (30) días después de la fecha de presentación del recurso**, por lo que éste no se perfeccionó adecuadamente y procedía su desestimación por falta de jurisdicción. Les asiste la razón a los peticionarios. Veamos.

De entrada, aclaramos que, por no estar en controversia que la recurrida presentó oportunamente su recurso de apelación ante el foro apelativo intermedio, analizaremos solamente lo relacionado con la **notificación** del recurso presentado ante ese foro judicial. En particular, estamos ante la falta de notificación de un recurso de apelación a una de las partes dentro del término reglamentario dispuesto para la presentación del recurso ante el Tribunal de Apelaciones, el cual es clasificado como un requisito de cumplimiento estricto. Según surge del expediente y tal como admitió la recurrida, el recurso de apelación no

fue notificado dentro del término reglamentario a una de las partes, entiéndase al albacea Hernández Nevárez.[22]

Conviene señalar que, en relación con la *Contestación a Demanda enmendada* presentada por el albacea Hernández Nevárez el 16 de marzo de 2022,[23] el foro de primera instancia emitió una *Orden* el 25 de marzo de 2022 en la que dispuso lo siguiente: "Enter[a]da.  Exprésense las demás partes en 10 d[í]as bajo apercibimiento [de] que se concederá el remedio solicitado y se dictará sentencia desestimando contra dicha parte".[24]   En cumplimiento de orden, los peticionarios presentaron su moción el 29 de marzo de 2022 y expresaron "su anuencia a la renuncia expresada por el [albacea Hernández Nevárez] y a que se dicte sentencia para relevarlo de este litigio".[25] **No obstante, del expediente no surge que el foro primario haya relevado al albacea Hernández Nevárez de su cargo tal como adelantó que haría una vez transcurriera el término concedido para que las partes se expresaran.**   Nótese que el foro de primera instancia sí emitió una *Sentencia*

---

[22]   Véase *Moción en oposición a expedición de auto de certiorari*, pág. 6.

[23]   En la *Contestación a Demanda enmendada*, el albacea Hernández Nevárez expresó que no podía ejercer el cargo, por lo que solicitó al foro primario que aceptara su renuncia.  Véase *Contestación a Demanda enmendada*, Apéndice del *certiorari*, págs. 482 y 484.

[24]   Véase *Orden*, Apéndice del *certiorari*, pág. 487.  El archivo en autos de copia de la *Orden* fue el 28 de marzo de 2022.

[25]   Véase *Moción en cumplimiento de orden*, Apéndice del *certiorari*, pág. 488.

*parcial* para desestimar la causa de acción en cuanto a los otros dos albaceas y los relevó del pleito.[26]

En su *Oposición a moción de desestimación* ante el Tribunal de Apelaciones presentada el 25 de marzo de 2024, la recurrida planteó que la falta de notificación del recurso de apelación al albacea Hernández Nevárez se debió a que éste no era parte en el pleito "por las circunstancias particulares en las que el tribunal de instancia lo relevó tras éste solicitarlo y ninguna parte oponerse".[27] Añadió que esas "circunstancias específicas" acreditaban que había justa causa "para que, de entender [el foro apelativo intermedio] que procedía notificarle […], se haya hecho con posterioridad a la presentación [del recurso]".[28]

En similares términos se expresó la recurrida el 10 de mayo de 2024 en su *Moción en oposición a expedición de auto de certiorari* ante este Foro. En específico, reiteró que el albacea Hernández Nevárez no era parte en el pleito y que si este Tribunal "entendiera que a pesar de las circunstancias específicas en las que el tribunal de [primera] instancia sacó al [albacea Hernández Nevárez] del caso había que considerarlo parte, entenderá que precisamente esas circunstancias específicas y la forma

---

[26]  Desconocemos las razones particulares por las que el foro primario no ha dictado una sentencia parcial para relevar al albacea Hernández Nevárez de este litigio, pero ello queda fuera del alcance de nuestra función revisora en esta etapa de los procedimientos.

[27]  Véase *Oposición a moción de desestimación,* Apéndice del *certiorari*, págs. 492-493.

[28]  Íd., pág. 493.

particular en la que el foro de [primera] instancia manejó la solicitud de [dicho albacea] para que se le sacara del caso constituyen justa causa para que se le haya notificado la [a]pelación posteriormente".[29]

Asimismo, debemos resaltar que la recurrida pretendió inducir a error a este Foro cuando en su *Moción en oposición a expedición de auto de certiorari* manifestó que "la jueza de instancia aceptó [la] renuncia [del albacea Hernández Nevárez] y lo relevó sin oposición de las partes".[30] Ante este panorama, es preciso señalar que el fundamento sobre el cual la recurrida sustenta que existe justa causa para la falta de notificación del recurso de apelación al albacea Hernández Nevárez en el término reglamentario es erróneo. Esto se debe a que -por las razones que fueran- **el foro primario <u>nunca</u> emitió una sentencia parcial con el fin de aceptar la renuncia del albacea Hernández Nevárez a su cargo y relevarlo del pleito, en conformidad con la Regla 42.3 de Procedimiento Civil,** *supra***. Añádase a esto que el cumplimiento con las formalidades establecidas en el Art. 821 del Código Civil de 1930,** *supra***, para relevar a un albacea de su designación al cargo no debe atenderse livianamente por el foro de primera instancia, toda vez que la determinación que se tome a tales fines incidirá directamente sobre la voluntad del testador. Según lo**

---

[29] Véase *Moción en oposición a expedición de auto de certiorari*, pág. 3.

[30] <u>Íd.</u>, pág. 4.

**expresamos, la persona designada como albacea en un testamento goza de la confianza del testador, por lo que su renuncia al cargo, además de ser por justa causa tiene que ser autorizada por el foro de primera instancia.**

Es importante señalar, incluso, que en el expediente consta que el foro primario notificó al albacea Hernández Nevárez la misma *Sentencia parcial* del 28 de noviembre de 2023 de la cual la recurrida acudió en revisión ante el foro apelativo intermedio.[31] De igual manera, se notificó al albacea Hernández Nevárez la *Moción de reconsideración de sentencia parcial* presentada por la recurrida el 13 de diciembre de 2023,[32] la *Oposición a moción de reconsideración de sentencia parcial* presentada por los peticionarios el 2 de enero de 2024[33] y la *Resolución* emitida por el foro de primera instancia el 15 de enero de 2024 mediante la cual se denegó la solicitud de reconsideración de la recurrida.[34]

Resolvemos que el albacea Hernández Nevárez continúa siendo parte en el litigio debido a que el foro de primera instancia no ha emitido una sentencia parcial mediante la cual acepte su renuncia al cargo de albacea y le releve

---

[31] Véase *Notificación de Sentencia parcial*, Apéndice del *certiorari*, pág. 233.

[32] Véase *Notificación de Moción de reconsideración*, Apéndice del *certiorari*, págs. 241-242.

[33] Véase *Notificación de Oposición a moción de reconsideración*, Apéndice del *certiorari*, pág. 249.

[34] Véase *Notificación de Resolución*, Apéndice del *certiorari*, pág. 252.

del pleito. Ante esto, correspondía que la recurrida le notificara oportunamente de la presentación del recurso de apelación ante el Tribunal de Apelaciones.

No obstante, y como hemos señalado, la recurrida no notificó oportunamente su recurso de apelación al albacea Hernández Nevárez dentro del término reglamentario dispuesto para ello en el Reglamento del Tribunal de Apelaciones. En contraste, **le notificó treinta (30) días después de la presentación del recurso de apelación ante el foro apelativo intermedio**, por lo que razonablemente podemos concluir que fue a raíz de la presentación de la *Moción de desestimación* por parte de los peticionarios ante el foro apelativo intermedio el 20 de marzo de 2024. Concluimos esto pues, según surge del expediente, la recurrida notificó el recurso de apelación al albacea Hernández Nevárez por correo certificado con acuse de recibo el **21 de marzo de 2024.**[35] En reiteradas ocasiones hemos expresado que las disposiciones reglamentarias que rigen el perfeccionamiento de los recursos apelativos deben observarse rigurosamente y su cumplimiento no puede quedar al arbitrio de las partes o sus abogados. Isleta v. Inversiones Isleta Marina, 203 DPR 585, 590 (2019).

Aun cuando el término reglamentario para notificar el recurso de apelación en cuestión es uno de cumplimiento

---

[35] Véase *Copia ponchada del envío por correo certificado*, Apéndice del *certiorari*, págs. 495-496.

estricto, en el presente caso la recurrida no brindó realmente una causa justificada para excusar una notificación tardía. Es decir, no ofreció una razón concreta y específica que justificara su incumplimiento con el requisito reglamentario de notificación del recurso de apelación. Como hemos indicado, dicho término de cumplimiento estricto solamente puede ser prorrogado "si la parte que lo solicita demuestra justa causa para la tardanza". Arriaga v. F.S.E., *supra*, pág. 131. Así pues, ante la ausencia de justa causa en el proceder de la recurrida, el foro apelativo intermedio no tenía discreción para prorrogar el término de cumplimiento estricto en cuestión, en específico de cumplir con lo establecido en la Regla 13(B)(1) del Reglamento del Tribunal de Apelaciones, *supra*.

Ante este escenario, al aplicar la normativa expuesta al presente caso, concluimos que erró el Tribunal de Apelaciones al denegar la *Moción de desestimación* presentada por los peticionarios, toda vez que la falta de notificación del recurso de apelación en cuestión, así como la inexistencia de justa causa para así actuar por parte de la recurrida, le privó de jurisdicción para atender el mismo y ejercer su función revisora. Por lo tanto, correspondía desestimar el recurso de apelación por falta de jurisdicción al éste no haberse perfeccionado adecuadamente. Al no proceder de esta forma, erró el foro apelativo intermedio.

**IV**

Por los fundamentos antes expresados, revocamos la *Resolución* del 10 de abril de 2024 emitida por el Tribunal de Apelaciones. En consecuencia, desestimamos el recurso de apelación presentado por la recurrida ante el foro apelativo intermedio por falta de jurisdicción y devolvemos el caso al foro primario para la continuación de los procedimientos en conformidad con lo resuelto en esta Opinión.

Se dictará Sentencia en conformidad.


                                ROBERTO FELIBERTI CINTRÓN
                                        Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Luis Fernando Freire Ruiz de Val y otros<br><br>    Peticionarios<br><br>          v.<br><br>Raquel Morales Román<br><br>      Recurrida<br><br>Pedro Antonio Hernández Nevárez<br><br>      Recurrido | CC-2024-244 | *Certiorari* |

SENTENCIA

En San Juan, Puerto Rico, a 6 de diciembre de 2024.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente Sentencia, expedimos el recurso de *certiorari* solicitado sin trámite ulterior en conformidad con la Regla 50 del Reglamento de este Tribunal, 4 LPRA Ap. XXI-B, y revocamos la *Resolución* del 10 de abril de 2024 emitida por el Tribunal de Apelaciones. En consecuencia, desestimamos el recurso de apelación presentado por la recurrida ante el foro apelativo intermedio por falta de jurisdicción y devolvemos el caso al foro primario para la continuación de los procedimientos en conformidad con lo resuelto en la Opinión.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Estrella Martínez no intervino.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo