Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| HÉCTOR ROMÁN ORTIZ **Recurrente** Vs. DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN **Recurrida** | KLRA202500304 Consolidado con KLRA202500305 | *REVISIÓN ADMINISTRATIVA* procedente del Departamento de Corrección y Rehabilitación Querella Núm. B-1748-24 B-1750-24 SOBRE: Reevaluación Custodia y Determinaciones de Hechos |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Hernández Sánchez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 25 de junio de 2025.

El 23 de mayo de 2025, el Sr. Héctor Román Ortiz (señor Román o el recurrente), miembro de la población correccional, compareció ante nos, por derecho propio, *in forma pauperis*, mediante un recurso de Revisión Judicial en el caso núm. KLRA202500304. En este, solicitó la revisión de una *Resolución* que se emitió el 22 de abril de 2025, y se notificó el 1 de mayo de 2025, por la División del Remedios Administrativos del Departamento de Corrección y Rehabilitación (DCR). Mediante el aludido dictamen, el DCR confirmó y amplió la respuesta recibida por la supervisora de Unidad Socio Penal de la Institución Correccional de Bayamón, la Sra. Enid Rosado Guadalupe (señora Rosado). Esta respuesta era relacionada a la *Solicitud de Remedios Administrativos* enumerada B-1750-24 que presentó el señor Ramón.

Por otro lado, ese mismo día, a saber, el 23 de mayo de 2025, el señor Román presentó otro recurso de Revisión Judicial en el caso núm. KLRA202500305. Mediante este recurso, solicitó la revisión de otra *Resolución* que el DCR dictó el 22 de abril de 2025, y notificó el 1

Número Identificador

SEN2025 _____

de mayo de 2025. En este dictamen, el DCR confirmó y amplió la respuesta recibida por la señora Rosado relacionada a la *Solicitud de Remedios Administrativos* enumerada B-1748-24 que presentó el señor Ramón.

A tenor con la Orden Administrativa Núm. DJ 2019-316, según enmendada por la Orden Administrativa Núm. DJ 2019-316A que emitió la Jueza Presidenta del Tribunal Supremo, la Hon. Maite Oronoz Rodríguez, y a tenor con la Orden Administrativa Núm. TA 2021-092 que emitió el Juez Administrador del Tribunal de Apelaciones, Hon. Roberto Sánchez Ramos, el 5 de junio de 2025, ordenamos la consolidación del caso núm. KLRA202500305, con el de mayor antigüedad, el caso núm. KLRA202500304.

I.

**A. KLRA202500304**

El 30 de octubre de 2024, el Comité de Clasificación y Tratamiento de la Institución de Bayamón 501 (el CCT), se reunió para evaluar el plan institucional del señor Ramón y conforme a éste y la totalidad de su expediente, emitió y notificó una *Resolución.*[1] En primer lugar, realizó las siguientes determinaciones de hechos:

- El 30 de mayo de 2002, ingresa en el Centro de Detención Correccional de San Juan por múltiples delitos de severidad extrema con una fianza de $10,050,000.

- El 2 de agosto de 2002, el confinado se evadió del Centro Judicial de San Juan con fianza de $11,365,000.

- El 22 de octubre de 2002, reingresa al Centro de Detención Correccional I y II.

- El 24 de febrero de 2003, el Tribunal de San Juan lo sentenció a 20 años en cada caso de Escalamiento Agravado (2 casos) y Robo (2 casos), 25 años en cada caso de Robo Vehicular y Robo, 30 años en cada caso de Robo y Robo Vehicular, 10 años por Tentativa de Asesinato, 99 años en cada caso de Violación (2 casos) y 6 meses por Fuga.

- El 26 de febrero de 2003, el Tribunal de Guayama lo sentenció a 99 años por Violación, 30 años por Robo, 12. años por Sodomía, 15 años por Escalamiento Agravado, 10 años por Art. 4.04 Ley de Armas, 3 años en cada caso

---

[1] Véase, págs. 5-6 del apéndice del *Escrito en Cumplimiento de Orden* presentado por el DCR.

de Utilización ilegal de tarjetas de crédito, Restricción a la libertad agravada (2 casos) y Art. 4.05 Ley de Armas.

- El 4 de marzo de 2003, el Tribunal de Caguas lo sentenció a 99 años por Violación, 30 años en cada caso de Robo y Robo domiciliario (3 casos), 18 años en cada caso de Robo Vehícular (2 casos), 15 años por Robo y 12 años por Sodomía, 10 años en cada caso de Tentativa de Violación y Art. 5.04 Ley de Armas (Portación y uso de armas de fuego sin licencia) (2 casos), 8 años en cada caso de Actos Lascivos (3 casos), 3 años en cada caso de Restricción a la libertad agravado (4 casos) y Agresión Agravada.

- El 10 de marzo de 2004, el Tribunal de Bayamón lo sentenció a 26 años por Art. 5.07 L. A, 24 años por Art. 5.10 L. A, 20 años por Art.5.04 LA., 12 años por Art. 6.01 L. A y 5 años por Empleo de violencia e intimidación contra la autoridad pública.

- El 12 de marzo de 2004, el Tribunal de Bayamón lo sentenció a 6 años por Art. 15 Ley 8 y 90 días por Desacato Criminal.

- El 13 de mayo de 2004, el Tribunal de Bayamón lo sentenció a 12 años en cada caso de Robo (3 casos), 5 años en cada caso de Art. 8 L.A (2 casos) y Art. 6 L.A, 4 años en cada caso de Art. 6 LA (2 casos) y 1 año en cada caso de Art.32 MG Ley de Armas (4 casos).

- El 9 de junio de 2003, el Tribunal de Carolina lo sentenció a 60 años por Violación, 30 años en cada caso de Robo (2 casos), 18 años en cada caso de Robo Vehícular (3 casos), 15 años por Escalamiento Agravado, 10 años en cada caso de Art. 4,04 L. A (7 casos), 12 años en cada caso de Robo (3 casos) y Sodomía, 5 años en cada caso de Art. 4.15 LA (5 casos) y 3 años en cada caso de restricción a la libertad (2 casos).

- Posee sentencia consolidada de 198 años no bonificables (por violación 2 casos) y 6 meses bonificables (por fuga). Ha cumplido 22 años, 1 mes y 29 días del término de su sentencia. Ya ha cumplido el mínimo de la sentencia, EL Máximo de su sentencia es para el 13 de enero de 2200.

- El mpc ha cumplido 22 años 2 mes y 29 días de su sentencia actual.

- Cumplió el mínimo de la sentencia el 16/agosto/2017.

- Cumple el máximo el 13/enero/2200.

- Fue clasificado Inicialmente en custodia Máxima el 5 de mayo de 2003 por razón de poseer delitos de carácter extremos, sentencia alta y casos pendientes.

- El 21 de octubre de 2019, se reclasifica a custodia mediana hasta el presente:

- El 22 de abril de 2024, culminó el Taller de Dibujo y Pintura Programa de Servicios Psicoeducativos de la Fundación Felisa Rincón Gautier.

- El MPC no cuenta con un plan de salida estructurado en ninguna de las tres áreas reglamentarias. No se ha beneficiado de ningún tratamiento ya que cuenta con una salud mental comprometida.

Luego, en la Parte II de la Resolución, intitulada *Escala de Reclasificación de Custodia (Casos Sentenciados)*[2], el CCT le otorgó al recurrente una puntuación total de custodia de 4 puntos. Según la escala, el nivel de custodia que le correspondía al señor Ramón era una de mínima. Sin embargo, en el encasillado de *Modificaciones Discrecionales para un Nivel de Custodia Más Bajo* el CCT marcó el criterio discrecional de gravedad de delito. Así pues, conforme a lo antes expuesto, las determinaciones de hechos realizadas y el derecho aplicable, determinó ratificar la custodia mediana del señor Ramón.

Cabe precisar que, en el dictamen antes mencionado, el CCT le hizo la siguiente advertencia al recurrente[3]:

> Del confinado no estar de acuerdo con la determinación del Comité de Clasificación y Tratamiento, este podrá reconsiderar la decisión de custodia:1. Presentando un recurso de revisión judicial ante el Tribunal de Apelaciones, dentro del término de treinta (30) días del recibo de la decisión de custodia, o 2. Presentando una solicitud de reconsideración dentro del término de veinte (20) días del recibo de la decisión de custodia. Del confinado optar por someter una solicitud de reconsideración, esta se someterá en el Formularlo de Reconsideración ante el Supervisor de la Unidad Sociopenal de la Institución por conducto del Técnico de Servicios Sociopenales, quien, a su vez, entregará copia del recibo. La agencia, dentro de los quince (15) días de haberse sometido la solicitud de reconsideración, deberá considerarla. Si la rechazare de plano o no actuare dentro de los quince (15) días, el termino de treinta (30) días para solicitar revisión ante el Tribunal de Apelaciones comenzara a correr nuevamente desde el recibo de la denegatoria o desde que expiren los quince (15) días, Según sea el caso. Si la agencia tomare alguna determinación en su consideración, el termino de treinta (30) días para solicitar revisión ante el Tribunal de Apelaciones, empezara a contar desde la fecha en que se reciba una copia de la notificación de la resolución de la agencia resolviendo definitivamente la moción de reconsideración. [...]

---

[2] Íd., págs. 7-8.
[3] Íd., pág. 6.

Inconforme con esta determinación, el 13 de diciembre de 2024, el recurrente presentó una *Solicitud de Remedio Administrativo* enumerada B-1750-24.[4] Allí, solicitó que se eliminará una determinación de hecho que presuntamente realizó el CCT en donde se expresó que el recurrente secuestró y asesinó a dos (2) mujeres. Planteó que dicha información no lo ayudaba a tener un plan institucional bueno y una evaluación buena. Expresó que únicamente quería ser evaluado por su conducta "excelente" durante sus 22 años de confinamiento.

El 23 de diciembre de 2024, se le envió una copia de dicha solicitud a la señora Rosado para que la División de Remedios Administrativos (DRA) atendiera el referido asunto.[5] Así pues, el 23 de enero de 2025, la DRA emitió una *Respuesta del Área Concernida/Superintendente* en la cual resolvió lo siguiente[6]:

> De acuerdo con el Manual para la Clasificación de los Confinados Número 9151 del 22 de enero de 2020, en la Sección 7, Reclasificación, Proceso de Reclasificación III, Parte C, Procedimientos de Reclasificación, se establece en la parte 5.b lo siguiente:
>
> "Verificar y estudiar los datos básicos relacionados con la clasificación, incluyendo los delitos actuales."
>
> Por lo tanto, no se puede atender su petición de no incluir las circunstancias del delito por el cual cumple sentencia.

En desacuerdo con esta determinación, el 12 de febrero de 2025, el recurrente presentó una *Solicitud de Reconsideración*.[7] Insistió que de su expediente no surgía el hecho de que había secuestrado y asesinado a dos (2) mujeres. Sostuvo que nunca había sido acusado por esos delitos por lo que se debía eliminar de su evaluación. El 5 de marzo de 2025, la DRA emitió una *Respuesta a Reconsideración* [...] acogiendo la solicitud de reconsideración y ordenándole a un coordinador de la DRA a emitir una *Resolución de Reconsideración*.[8]

---

[4] Íd., pág. 22.
[5] Íd., pág. 23.
[6] Íd., págs. 25-26.
[7] Íd., pág. 27.
[8] Íd., págs. 29-30.

En cumplimiento con la referida orden, el 22 de abril de 2025, la DRA emitió una *Resolución de* que se notificó el 1 de mayo de 2025.[9] En primer lugar, realizó las siguientes determinaciones de hechos:

1. El recurrente presento Solicitud de Remedios Administrativos el 13 de diciembre de 2024 ante el Evaluador de Remedios Administrativos, Maribel García Charnez de la Oficina de Bayamón. En su escrito expone que no está de acuerdo con las Determinaciones de Hechos que solo quiere que se le evalué la conducta excelente que lleva por más de veintidós (22) años de confinamiento.

2. El 23 de diciembre de 2024 se hizo Notificación dirigida al Sra. Enid Rosado Guadalupe, Supervisora Unidad Sociopenal, Institución Correccional Bayamón 501.

3. El 22 de enero de 2025 se recibió respuesta por parte de la Sra. Enid Rosado Guadalupe, Supervisora Unidad Sociopenal, Institución Correccional Bayamón 501, quien contesto citando el Manual para la Clasificación de los Confinados Número 9151 del 22 de enero de 2020 el cual indica que Verificar y estudiar los datos básicos relacionados con la clasificación, incluyendo los delitos actuales.

4. El 23 de enero de 2025 se realiza Respuesta y el 24 de enero de 2025 se hace la entrega al recurrente del Recibo de Respuesta.

5. El 12 de enero de 2025, el recurrente inconforme con la respuesta emitida, presentó Solicitud de Reconsideración ante el Coordinador Regional de Remedios Administrativos. En síntesis, arguye que no está de acuerdo con la respuesta recibida.

6. Se acoge la petición de reconsideración el 5 de marzo de 2025.

Luego, conforme a las determinaciones de hechos antes enumeradas y el derecho aplicable, en lo pertinente, resolvió lo siguiente:

Luego de leer y evaluar las Determinaciones de Hechos realizadas por la Sra. Gabriela Mercado, Técnico Sociopenal, Institución Correccional Bayamón 501 y corroboradas por la Sra. Enid Rosado Guadalupe, Supervisora Unidad Sociopenal, Institución.

Correccional Bayamón 501 entendemos que se circunscriben a los hechos que se desprenden de las sentencias que se encuentran en el expediente criminal del recurrente.

En cuanto a las alegaciones del recurrente de que se incluyó los delitos de asesinato y secuestro le informamos que de su expediente criminal se desprende lo siguiente:

---

[9] Íd., págs. 31-32.

| Delito | Número Criminal |
|---|---|
| Tentativa Secuestro | KPD2002G1216 |
| Secuestro Agravado | KDC2002G0059 |
| Tentativa Asesinato | KVI2002G0079 |

Como obran en el expediente criminal del recurrente se informan con la totalidad de las demás sentencias como corresponde en la Determinaciones de Hechos. Recuerde que en esta parte de la Evaluación de Custodia hay que narrar las acciones, sentencias y cualquier otra información que explique las razones del confinamiento.

Conforme a lo antes resuelto, confirmó y amplió la *Respuesta del Área Concernida/Superintendente* recibida por la señora Rosado relacionada a la *Solicitud de Remedios Administrativos* enumerada B-1750-24 que presentó el señor Ramón.

Aún en desacuerdo, el 23 de mayo de 2025, el señor Ramón presentó una Revisión Judicial en el caso núm. KLRA202500304 y formuló el siguiente señalamiento de error:

> **Erró el Comité de Clasificación de los Confinados el incluir en mi evaluación de custodia el yo haber asesinado a dos (2) mujeres porque eso no obra en mi expediente.**

## B. KLRA202500305

Inconforme con la *Resolución* que emitió y notificó el CCT el 30 de octubre de 2024, mediante la cual se ratificó la custodia mediana del recurrente, cuestión que fue discutida en el tracto procesal previamente expuesto, el 13 de diciembre de 2024, el señor Ramón presentó una *Solicitud de Remedio Administrativo* enumerada B-1748-24.[10] Esta estuvo dirigida al superintendente para que le ordenara al CCT a cumplir con el Reglamento Núm. 9151, intitulado *Manual para la Clasificación de Confinados* que se aprobó el 22 de enero de 2020.

El 23 de diciembre de 2024, se le envió una copia de dicha solicitud a la señora Rosado para que la DRA atendiera el referido asunto.[11] Así las cosas, el 23 de enero de 2025, la DRA emitió una *Respuesta del Área Concernida/Superintendente* en la cual determinó lo siguiente[12]:

---

[10] Íd., pág. 10.
[11] Íd., pág. 11.
[12] Íd., págs. 13-14.

De acuerdo con el Manual para la Clasificación de los Confinados Número 9151 del 22 de enero de 2020, en la Sección 7, Reclasificación II, la evaluación de custodia es similar a la evaluación inicial de custodia, pero pone un énfasis mayor en la conducta institucional, reflejando el comportamiento real del confinado durante su reclusión.

Es esencial que los confinados que cumplen sentencias prolongadas tengan la oportunidad de reducir sus niveles de custodia mediante el cumplimiento de los requisitos de la institución. Sin embargo, la revaluación de custodia no necesariamente resulta en un cambio en la clasificación de custodia o en la vivienda asignada. Su función primordial es verificar la adaptación del confinado y prestar atención a cualquier situación que pueda surgir.

El Manual para la Clasificación de los Confinados Número 9151 del 22 de enero de 2020, en su Sección V, Procedimiento de reconsideración, también contempla en la Parte IV un recurso de revisión de las recomendaciones de reclasificación del Técnico de Servicios Sociopenales. En la Parte V, Proceso de reconsideración, se establece que cuando un confinado no está de acuerdo con la decisión del Comité de Clasificación y Tratamiento y apela la decisión de custodia, dicho proceso deberá ser atendido y recibir una contestación de la Oficina de Clasificación de Confinados.

Usted ejerció este derecho y recibió la contestación el 22 de noviembre de 2024. En esa fecha, se le oriento conforme al Manual de Clasificación de Confinados sobre su derecho a solicitar revisión judicial ante el Tribunal Apelativo dentro de los 30 días siguientes a la recepción de la determinación final de la reconsideración de clasificación.

En desacuerdo con esta determinación, el 12 de febrero de 2025, el recurrente presentó una *Solicitud de Reconsideración*.[13] Indicó que llevaba siete (7) años de haber cumplido su sentencia mínima sin querellas ni informes negativos, pero que todavía no se le había dado la oportunidad de disfrutar de una custodia mínima.

Evaluada la solicitud de reconsideración, el 5 de marzo de 2025, la DRA emitió una *Respuesta a Reconsideración* [...] acogiendo la solicitud de reconsideración y ordenándole a un coordinador de la DRA a emitir una *Resolución de Reconsideración*.[14]

En cumplimiento con la referida orden, el 22 de abril de 2025, la DRA emitió una *Resolución* que se notificó el 1 de mayo de 2025.[15] En primer lugar, realizó las siguientes determinaciones de hechos:

---

[13] Íd., pág. 15.
[14] Íd., pág. 17.
[15] Íd., págs. 19-20.

1. El recurrente presentó Solicitud de Remedios Administrativos el 13 de diciembre de 2024, ante el Evaluador de Remedios Administrativos, Maribel García Charriez de la Oficina de Bayamón. En su escrito expone que está dirigida al Superintendente para ordene al Comité y supervisora que el deber, responsabilidad y obligación de cumplir el Reglamento 9151, específicamente en el Apendice II Objetivos de la Reclasificación de Custodia.

2. El 23 de diciembre de 2024, se hizo Notificación dirigida al Sra. Enid Rosado Guadalupe, Supervisora Unidad Sociopenal, Institución Correccional Bayamón.

3. El 22 de enero de 2025 se recibió respuesta por parte de la Sra. Enid Rosado Guadalupe, Supervisora Unidad Sociopenal, Institución Correccional Bayamón 501, quien contesto que la evaluación de custodia es similar a la evaluación inicial de custodia, pero pone un énfasis mayor en la conducta institucional, reflejando el comportamiento real del confinado durante su reclusión.

4. El 23 de enero de 2025, se realiza Respuesta y el 24 de enero de 2025, se hace la entrega al recurrente del Recibo de Respuesta.

5. El 12 de enero de 2025, el recurrente inconforme con la respuesta emitida, presentó Solicitud de Reconsideración ante el Coordinador Regional de Remedios Administrativos. En síntesis, arguye que no está de acuerdo con la respuesta recibida.

6. Se acoge la petición de reconsideración el 5 de marzo de 2025.

Luego, conforme a las determinaciones de hechos antes esbozadas y el derecho aplicable, en lo pertinente, resolvió lo siguiente:

Se desprende el expediente social que el 22 de noviembre de 2024 se le entrego al recurrente la Respuestas de la Solicitud de Reconsideración por parte de la Sra. Enid Rosado Guadalupe, Supervisora Unidad Sociopenal, Institución Correccional Bayamón 501, obrando la firma la entrega del documento.

Orientamos al recurrente que una vez entregado el miembro de la población correccional tiene un término de treinta (30) días para solicitar revisión ante el Tribunal de Apelaciones. Este organismo podrá dilucidar de manera imparcial sus alegatos, los procedimientos y determinaciones del Departamento de Corrección y Rehabilitación, según se desprende del Manual para la Clasificación de los Confinados Número 9151 del 22 de enero de 2020.

Conforme a lo antes expresado, confirmó y amplió la *Respuesta del Área Concernida/Superintendente* recibida por la señora Rosado relacionada a la *Solicitud de Remedios Administrativos* enumerada B-1748-24 que presentó el recurrente.

Aún en desacuerdo, el 23 de mayo de 2025, el señor Ramón presentó una Revisión Judicial en el caso núm. KLRA202500305 y formuló el siguiente señalamiento de error:

> **Erró el Comité al no clasificarme en la custodia mínima porque según la guía que se le ofrece al Comité llamada (Escala de Clasificación de Custodia) arroje una puntuación que clasifico para un cambio de custodia porque fue menor de 5 puntos.**

Atendido tanto el recurso en el caso núm. KLRA202500304 como el recurso correspondiente al caso núm. KLARA202500305, el 5 de junio de 2025, emitimos una *Resolución*. En esta, le ordenamos al DCR a que nos proveyera unos documentos del expediente administrativo para un mejor entendimiento del asunto ante nuestra consideración. Además, le concedimos a la recurrida hasta el 16 de junio de 2025, para presentar su postura en cuanto al recurso.

Oportunamente, el DCR representado por la Oficina del Procurador General, presentó un *Escrito en Cumplimiento con Resolución.* Puntualizó que, los reclamos del recurrente debieron canalizarse mediante los mecanismos establecidos dentro del proceso de evaluación de custodia, tales como la solicitud de reconsideración y, posteriormente, la revisión judicial ante el Tribunal de Apelaciones. Sin embargo, argumentó que el recurrente acudió erróneamente ante la DRA, entidad sin jurisdicción para atender controversias relacionadas con determinaciones de custodia. Así pues, concluyó que la DRA actuó correctamente al limitarse a orientar al recurrente conforme al Manual Núm. 9151, que establece el procedimiento adecuado, incluyendo el derecho a presentar un recurso de revisión ante el tribunal. Por otro lado, indicó que en el caso de la solicitud B-1750-24, la DRA incluso advirtió al recurrente que el manual permitía considerar factores como los delitos cometidos y las sentencias en su expediente, en respuesta a su impugnación sobre los hechos consignados en la resolución de reconsideración. Por los motivos antes expuestos, sostuvo que la DRA atendió los asuntos ante su consideración de forma correcta y, por ende, sus dictámenes debían ser confirmados.

Con el beneficio de la comparecencia de ambas partes, procedemos a atender el asunto ante nos. *Veamos.*

## II.

### -A-

La jurisdicción es la autoridad que posee un tribunal o un foro administrativo para considerar y adjudicar determinada controversia o asunto. *Pérez López y otros v. CFSE,* 189 DPR 877, 882 (2013). La falta de jurisdicción trae consigo las consecuencias siguientes:

> (a) no es susceptible de ser subsanada; (b) las partes no pueden voluntariamente conferírsela a un tribunal, como tampoco puede este arrogársela; (c) conlleva la nulidad de los dictámenes emitidos; (d) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; (e) impone a los tribunales apelativos el deber de examinar la jurisdicción del foro de donde procede el recurso; y (f) puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal motu propio. *MCS Advantage, Inc. v. Fossas Blanco,* 211 DPR 135, 145 (2023).

A tono con lo anterior, nuestro Tribunal Supremo ha expresado que los tribunales **"debemos ser celosos guardianes de nuestra jurisdicción", por lo que tenemos la indelegable labor de auscultarla, incluso cuando ello no se nos haya planteado**. (Énfasis nuestro). *Yumac Homa v. Empresas Masso,* 194 DPR 96,104 (2015). Así pues, "las cuestiones jurisdiccionales deben ser resueltas con preferencia, y de carecer un tribunal de jurisdicción lo único que puede hacer es así declararlo". *Perez Lopez y otros v. CFSE,* supra, pág. 883. Ello, ya que los tribunales no tenemos discreción para asumir jurisdicción donde no la tenemos. *Yumac Home v. Empresas Masso,* supra, pág. 103. Cuando este Foro carece de jurisdicción, procede la inmediata desestimación del recurso apelativo. *Freire Ruiz v. Morales Román,* 2024 TSPR 129, 214 DPR ____ (2024).

De otra parte, un recurso presentado prematura o tardíamente priva insubsanablemente de jurisdicción y autoridad al tribunal ante el cual se recurre para atender el asunto, caso o controversia. *Torres Martínez v. Torres Ghigliotty,* 175 DPR 83, 98 (2008). Estos tipos de recursos carecen de eficacia y no producen ningún efecto jurídico,

pues, al momento de su presentación, su naturaleza prematura o tardía hace que el foro apelativo no tenga autoridad alguna para acogerlo. Íd. Conforme a lo que antecede, este Tribunal de Apelaciones puede desestimar, *motu proprio*, un recurso prematuro o tardío por carecer de jurisdicción.

**-B-**

La Sección 3.15 de la Ley Núm. 38-2017, según enmendada, conocida como la *Ley de Procedimiento Administrativo del Gobierno de Puerto Rico*, 3 LPRA sec. 9655 (LPAUG) preceptúa lo siguiente:

> La parte adversamente afectada por una resolución u orden parcial o final podrá, dentro del término de veinte (20) días desde la fecha de archivo en autos de la notificación de la resolución u orden, presentar una moción de reconsideración de la resolución u orden. La agencia dentro de los quince (15) días de haberse presentado dicha moción deberá considerarla. Si la rechazare de plano o no actuare dentro de los quince (15) días, el término para solicitar revisión comenzará a correr nuevamente desde que se notifique dicha denegatoria o desde que expiren esos quince (15) días, según sea el caso. Si se tomare alguna determinación en su consideración, el término para solicitar revisión empezará a contarse desde la fecha en que se archive en autos una copia de la notificación de la resolución de la agencia resolviendo definitivamente la moción de reconsideración. (Énfasis suplido)

> [...]

Por su parte, la Sección 4.2 de la LPAUG, 3 LPRA sec. 9672, contempla la revisión judicial de las decisiones administrativas finales ante este foro intermedio y establece lo siguiente:

> [u]na parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la Sección 3.15 de esta Ley, cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración. (Énfasis nuestro).

Dicho término de treinta (30) días para solicitar la revisión judicial ante este Tribunal es uno jurisdiccional, es decir, es improrrogable, fatal e insubsanable, y, por ende, no puede acortarse y

tampoco es susceptible de extenderse. *Assoc. Condomines v. Meadows Dev.*, 190 DPR 843, 847 (2014).

III.

Es harto sabido que las cuestiones relativas a la jurisdicción de un tribunal para atender ciertas controversias deben resolverse con preferencia. Por consiguiente, de entrada, resolvemos que este Tribunal de Apelaciones carece de jurisdicción para atender las controversias planteadas mediante las revisiones judiciales correspondientes a los casos núm. KLRA202500304 y KLRA202500305.

En el caso de autos, el 30 de octubre de 2024, el CCT se reunió para evaluar el plan institucional del señor Román y, conforme a este y a la totalidad de su expediente, emitió y notificó una *Resolución* ratificando su clasificación en custodia mediana. En la última página de dicho dictamen, el CCT le formuló al recurrente las siguientes advertencias:

> Del confinado no estar de acuerdo con la determinación del Comité de Clasificación y Tratamiento, este podrá reconsiderar la decisión de custodia:1. Presentando un recurso de revisión judicial ante el Tribunal de Apelaciones, dentro del término de treinta (30) días del recibo de la decisión de custodia, o 2. Presentando una solicitud de reconsideración dentro del término de veinte (20) días del recibo de la decisión de custodia. Del confinado optar por someter una solicitud de reconsideración, esta se someterá en el Formularlo de Reconsideración ante el Supervisor de la Unidad Sociopenal de la Institución por conducto del Técnico de Servicios Sociopenales, quien, a su vez, entregará copia del recibo. La agencia, dentro de los quince (15) días de haberse sometido la solicitud de reconsideración, deberá considerarla. Si la rechazare de plano o no actuare dentro de los quince (15) días, el termino de treinta (30) días para solicitar revisión ante el Tribunal de Apelaciones comenzara a correr nuevamente desde el recibo de la denegatoria o desde que expiren los quince (15) días, Según sea el caso. Si la agencia tomare alguna determinación en su consideración, el termino de treinta (30) días para solicitar revisión ante el Tribunal de Apelaciones, empezara a contar desde la fecha en que se reciba una copia de la notificación de la resolución de la agencia resolviendo definitivamente la moción de reconsideración. [...]

Estas advertencias están fundamentadas en lo dispuesto por las Secciones 3.15 y 4.2 de la LPAUG, *supra,* las cuales establecen con claridad los términos para la presentación de una solicitud de

reconsideración o de un recurso de revisión judicial. Particularmente, la Sección 3.15 de la LPAUG, *supra,* dispone que una parte adversamente afectada por una determinación final de una agencia tiene un término de veinte (20) días desde la notificación para presentar una moción de reconsideración. Alternativamente, la Sección 4.2 de la LPAUG, supra, establece que una parte adversamente afectada por una determinación final puede presentar una revisión judicial ante el Tribunal de Apelaciones dentro de un término de treinta (30) días, contados a partir de la notificación de la resolución final.

Tal como se estableció, el señor Román fue debidamente advertido de estas vías procesales. No obstante, no presentó ninguno de los recursos correspondientes dentro de los términos dispuestos por ley. En su lugar, el 13 de diciembre de 2024, presentó dos Solicitudes de Remedios Administrativos ante la DRA, identificadas como B-1748-24 y B-1750-24, en las cuales impugnó determinaciones contenidas en la *Resolución* del 30 de octubre de 2024. Sin embargo, la DRA carecía de jurisdicción para atender controversias relacionadas con la clasificación y custodia. Por tanto, los trámites realizados por el recurrente ante dicha división no interrumpieron ni extendieron el término jurisdiccional para recurrir ante este Tribunal.

Es norma reiterada que la jurisdicción constituye la autoridad legítima que tiene un foro para considerar y adjudicar una controversia. La ausencia de jurisdicción es un defecto insubsanable que no puede ser conferido por las partes ni arrogado por el tribunal, e impone a los foros judiciales el deber de examinarla *motu propio* en cualquier etapa del procedimiento. Véase *Pérez López y otros v. CFSE,* supra, pág. 882; *MCS Advantage, Inc. v. Fossas Blanco,* supra, pág. 145; *Yumac Homa v. Empresas Masso,* supra, pág. 104. En efecto, nuestro Tribunal Supremo ha reiterado que "las cuestiones jurisdiccionales deben ser resueltas con preferencia, y de carecer un tribunal de jurisdicción, lo único que puede hacer es así declararlo". *Pérez López y otros v. CFSE,* supra, pág. 883.

Asimismo, un recurso presentado de forma prematura o tardía priva insubsanablemente al foro revisor de jurisdicción y autoridad para considerar el caso. Tales recursos no producen efecto jurídico alguno. *Torres Martínez v. Torres Ghigliotty*, supra, pág. 98. En armonía con lo anterior, este Tribunal puede desestimar *motu propio* un recurso prematuro o tardío por falta de jurisdicción. *Freire Ruiz v. Morales Román*, supra.

Por tanto, siendo evidente que el señor Román no presentó oportunamente ni una solicitud de reconsideración ni un recurso de revisión judicial conforme a derecho, y que optó en su lugar por acudir a un foro administrativo sin jurisdicción, este Tribunal de Apelaciones carece de autoridad para considerar los recursos presentados. En consecuencia, procede decretar la desestimación inmediata de los casos núm. KLRA202500304 y KLRA202500305 por falta de jurisdicción.

IV.

Por los fundamentos antes expuestos, ***desestimamos*** las Revisiones Judiciales presentadas por el señor Ramón en los casos núm. KLRA202500304 y KLRA202500305 por falta de jurisdicción por tardías.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones