Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| Clínica Todo Salud, LLC.<br><br>**Querellante-Recurrente**<br><br>Vs.<br><br>Depto. De Salud de Puerto Rico, Secretaria Auxiliar para la Reglamentación y Acreditación de Facilidades de Salud<br><br>**Querellado**<br><br>Hospital Español Auxilio Mutuo de PR, Inc.; Laboratorio Clínico el Monte, Inc.; COOPLAB; Asociación Laboratorios Clínicos, Inc.; Laboratorio Biomédico de Puerto Rico; Integrante Community Health System, Inc.; Metro Pavia, Inc.<br><br>**Parte Indispensable-Recurrida** | TA2025RA00142 | *REVISIÓN ADMINISTRATIVA* procedente de la Secretaría Auxiliar para la Regulación de la Salud Pública del Departamento de Salud<br><br>Querella Núm. Q-22-08-011<br><br>SOBRE: Revisión de Resolución de la SARSP que impide presentar evidencia en contravención con la LPAU. |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Rivera Torres y el Juez Marrero Guerrero.

Hernández Sánchez, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 21 de agosto de 2025.

El 11 de agosto de 2025, Clínica Todo Salud, LLC. (CTS o la recurrente) compareció ante nos mediante un recurso de Revisión Judicial y solicitó la revisión de una *Orden* que se emitió el 1 de julio de 2025 y se notificó el 8 de julio de 2025 por la División de Vistas Administrativas del Departamento de Salud (DS o la recurrida). Mediante el aludido dictamen, el DS declaró Ha Lugar la *Moción Objetando la Admisibilidad de Documentos Nuevos* [...] que presentó el Hospital Español Auxilio Mutuo de P.R., Inc. (HEAM). En

consecuencia, resolvió que el Estudio de Necesidad y Conveniencia de Junio de 2025 y el nuevo Análisis Financiero presentado por CTS eran inadmisibles por ser evidencia documental que no estuvo disponible para la vista pública del caso. Para fundamentar su determinación, sostuvo que la Regla 22 del Reglamento Núm. 9321, aprobado el 29 de octubre de 2021 (Reglamento Núm. 9321), le autorizaba al Oficial Examinador a excluir aquella evidencia que fuese impertinente, inmaterial, repetitiva o inadmisible por fundamentos constitucionales y legales basados en privilegios evidenciarios. Además, añadió que el inciso duodécimo de la Orden Gubernativa de las Vistas Adjudicativas del 27 de septiembre de 2019 establecía que, en los caos de Querellas para impugnar la determinación del Secretario de Salud sobre el otorgamiento de un Certificado de Necesidad y Conveniencia (CNC), solo sería admisible evidencia documental o testifical que hubiese estado disponible a la fecha de la vista pública para la evaluación del CNC.

Por los fundamentos que expondremos a continuación, **desestimamos** por falta de jurisdicción.

I.

El 17 de octubre de 2022, CTS presentó una *Segunda Querella Enmendada* ante el Departamento de Salud en la cual impugnó una determinación realizada por el Secretario de Salud.[1] En ese dictamen, el Secretario de Salud le denegó un CNC a la recurrente para establecer un laboratorio clínico ya que no presentó evidencia de que los HMOs a los que estaba afiliada, tuviesen una certificación de exención federal que le permitiese obtener su CNC al amparo del Art. 6 de la Ley Núm. 2 de 7 de noviembre de 1975, según enmendada, también conocida como *Ley de Certificados de Necesidad y Conveniencia,* 24 LPRA sec. 334f.

---

[1] Véase, Anejo 21 del apéndice del recurso, SUMAC TA.

Luego de la presentación de la querella antes mencionada se llevaron a cabo varios trámites procesales. Entre estos, CTS presentó interrogatorios y requerimientos de producción de documentos dirigidos a las partes opositoras, a saber, HEAM, Laboratorio Clínico Hyde Park y Metro Pavía Clinic. Dichas entidades presentaron sus respectivas contestaciones, las cuales fueron objetadas por CTS por considerarlas insuficientes, y la Oficial Examinadora emitió varias Órdenes relacionadas a tales objeciones.[2]

Eventualmente, el 27 de mayo de 2025, la Oficial Examinadora del DS emitió una *Orden* en la cual señaló la vista adjudicativa para celebrarse el 27, 28, y 29 de agosto de 2025.[3] El 24 de junio de 2025, la recurrente envió a todas las partes un Informe de Conferencia con Antelación al Juicio actualizado y la prueba documental que estaría presentando en la vista.[4]

Así las cosas, el 1 de julio de 2025, HEAM presentó una *Moción Objetando la Admisibilidad de Documentos* […].[5] En síntesis, objetó la admisibilidad de dos documentos presentados por CTS, a saber, un Estudio de Necesidad y Conveniencia de Junio de 2025 y un análisis financiero, por tratarse de evidencia nueva no incluida en la propuesta inicial del CNC ni anunciada durante las etapas previas del procedimiento. Planteó que su presentación tardía constituía un intento de corregir deficiencias previamente señaladas, en violación a los principios de transparencia y equidad procesal establecidos en la Ley de Procedimientos Administrativo Uniforme del Gobierno y el Reglamento Núm. 9321. Asimismo, argumentó que dicha presentación vulneraba el debido proceso al privar a las partes de la oportunidad de recibir notificación

---

[2] Íd., Anejo 15.
[3] Íd., Anejo 8.
[4] Íd., Anejo 6.
[5] Íd., Anejo 5.

oportuna, evaluar el contenido y responder adecuadamente. Finalmente, sostuvo que conforme a la Regla 22 del Reglamento Núm. 9321, *supra*, la Oficial Examinadora tenía plena facultad para excluir evidencia por ser inoportuna, impertinente y generadora de un perjuicio injustificado, lo que colocaba a las partes en un estado de indefensión. Cabe precisar que, el 7 de julio de 2025, Laboratorio Clínico Hyde Park presentó una moción uniéndose a los argumentos de HEAM.[6]

Evaluada esta moción, el 1 de julio de 2025, la Oficial Examinadora del DS emitió una *Orden* que se notificó el 8 de julio de 2025. En esta, declaró Ha Lugar la *Moción Objetando la Admisibilidad de Documentos Nuevos* [...] que presentó HEAM. Consecuentemente, resolvió que el Estudio de Necesidad y Conveniencia de Junio de 2025 y el nuevo Análisis Financiero presentado por CTS eran inadmisibles por ser evidencia documental que no estuvo disponible para la vista pública del caso. Para fundamentar su determinación, sostuvo que la Regla 22 del Reglamento Núm. 9321, *supra*, le autorizaba al Oficial Examinador a excluir aquella evidencia que fuese impertinente, inmaterial, repetitiva o inadmisible por fundamentos constitucionales y legales basados en privilegios evidenciarios. Además, añadió que el inciso duodécimo de la Orden Gubernativa de las Vistas Adjudicativas del 27 de septiembre de 2019 establecía que, en los casos de Querellas para impugnar la determinación del Secretario de Salud sobre el otorgamiento de un CNC, solo sería admisible evidencia documental o testifical que hubiese estado disponible a la fecha de la vista pública para la evaluación del CNC.

Inconforme con esta determinación, el 17 de julio de 2025, CTS presentó una solicitud de reconsideración que fue denegada

---

[6] Íd., Anejo 4.

mediante una *Orden* que se emitió y notificó el 18 de julio de 2025 por la Oficial Examinadora del DS.[7] Aún en desacuerdo, el 11 de agosto de 2025, CTS presentó el recurso de epígrafe y formuló el siguiente señalamiento de error:

> **Erró la Oficina Examinadora al disponer que, durante la vista adjudicativa, CTS sólo podía presentar como evidencia lo que ya hubiese presentado durante la vista pública toda vez que dicha determinación es contraria a las garantías procesales de la Ley de Procedimiento Administrativo Uniforme.**

Cabe precisar que, junto al recurso de epígrafe, CTS presentó una *Moción en Auxilio de Jurisdicción* solicitando que emitiéramos un remedio en equidad o *injuction* para ordenarle al DS a permitirle presentar en la vistas adjudicativas a celebrarse un Estudio de Necesidad y Conveniencia con fecha de junio de 2025 preparado por su perito economista y un Análisis Financiero presentado por su Director de Finanzas de conformidad con la Sección 3.1 de la LPAUG, 3 LPRA sec. 9641 y la Regla 22 el Reglamento Núm. 9321, *supra.* En la alternativa, solicitó que paralizáramos las vistas adjudicativas hasta tanto el DS o los opositores interventores mostraran causa bajo la referida Sección 3.1 de la LPAUG y los Reglamentos Núm. 9084 y 9321 por la cual no se debía revocar la *Orden* recurrida que excluía la prueba antes mencionada.

Atendido el recurso y la solicitud de auxilio de jurisdicción, el 11 de agosto de 2025, emitimos una *Resolución* concediéndole a la parte recurrida hasta el 18 de agosto de 2025 para presentar su posición en cuanto al auxilio y al recurso. Oportunamente, el Laboratorio Clínico Hyde Park presentó su *Moción de Desestimación por Falta de Jurisdicción En la Alternativa, Oposición a Recurso de Revisión a la Moción en Auxilio de Jurisdicción.* Por su parte, el HEAM

---

[7] *Íd.*, Anejo 1 y 2.

presentó una *Solicitud de Desestimación por Falta de Jurisdicción y Oposición A Moción en Auxilio de Jurisdicción y Recurso de Revisión.*

En sus escritos, ambas partes solicitaron la denegación de la solicitud de auxilio de jurisdicción y negaron que el DS cometiera el error que CTS le imputó. Sin embargo, solicitaron la desestimación del recurso argumentando que la CTS no acudía ante nos de una decisión administrativa final, sino de una orden interlocutoria relativa a un asunto meramente procesal de admisibilidad de evidencia. En vista de ello y del derecho aplicable, sostuvieron que carecíamos de jurisdicción para tender la revisión solicitada.

Con el beneficio de la comparecencia de ambas partes, procedemos a atender el asunto ante nos. *Veamos.*

II.

La jurisdicción es la autoridad que posee un tribunal o un foro administrativo para considerar y adjudicar determinada controversia o asunto. *Pérez López y otros v. CFSE,* 189 DPR 877, 882 (2013). La falta de jurisdicción trae consigo las consecuencias siguientes:

> (a) no es susceptible de ser subsanada; (b) las partes no pueden voluntariamente conferírsela a un tribunal, como tampoco puede este arrogársela; (c) conlleva la nulidad de los dictámenes emitidos; (d) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; (e) impone a los tribunales apelativos el deber de examinar la jurisdicción del foro de donde procede el recurso; y (f) puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal motu propio. *MCS Advantage, Inc. v. Fossas Blanco,* 211 DPR 135, 145 (2023).

A tono con lo anterior, nuestro Tribunal Supremo ha expresado que los tribunales **"debemos ser celosos guardianes de nuestra jurisdicción", por lo que tenemos la indelegable labor de auscultarla, incluso cuando ello no se nos haya planteado**. (Énfasis nuestro). *Yumac Homa v. Empresas Masso,* 194 DPR 96,104 (2015). Así pues, **"las cuestiones jurisdiccionales deben ser resueltas con preferencia, y de carecer un tribunal de**

**jurisdicción lo único que puede hacer es así declararlo".** (Énfasis suplido) *Pérez Lopez y otros v. CFSE,* supra, pág. 883. Ello, ya que los tribunales no tenemos discreción para asumir jurisdicción donde no la tenemos. *Yumac Home v. Empresas Masso*, supra, pág. 103. **Cuando este Foro carece de jurisdicción, procede la inmediata desestimación del recurso apelativo.** (Énfasis suplido) *Freire Ruiz v. Morales Román,* 2024 TSPR 129, 214 DPR ____ (2024).

Ahora bien, en lo pertinente al caso ante nos, cabe preciar que, el Art. 4.006(c) de la Ley Núm. 201-2003, según enmendada, mejor conocida como la *Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003*, 4 LPRA sec. 24(y)(c), establece que el Tribunal de Apelaciones tiene competencia para revisar las "**decisiones, órdenes y resoluciones <u>finales</u>** de organismos o agencias administrativas". De igual forma, la Regla 56 del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA, 2025 TSPR 42, pág. 79 , 215 DPR ____ (2025),* claramente dispone que son objeto de revisión judicial "las resoluciones y providencias finales dictadas por organismos o agencias administrativas".

Por su parte, la Ley Núm. 38-2017, según enmendada, mejor conocida como *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAUG), 3 LPRA sec. 9601 *et seq.,* delimita el alcance de la revisión judicial de las decisiones administrativas y en su Sección 4.2, 3 LPRA sec. 9672, dispone que la revisión administrativa ante el Tribunal de Apelaciones se hará respecto a las **órdenes o resoluciones finales**, luego de que el recurrente haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente.

Consonó con lo anterior, nuestro más alto foro ha expresado que una orden o resolución final es aquella que culmina el procedimiento administrativo, tiene efectos sustanciales sobre las partes y resuelve todas las controversias ante la agencia, les pone

fin, sin dejar pendiente una para ser decidida en el futuro. *Comisionado Seguros v. Universal,* 167 DPR 21, 29 (2006). Por su parte, La LPAUG no define expresamente el término "orden o resolución final", sin embargo, la Sec. 3.14 de la referida ley, 3 LPRA sec.9654, dispone que una orden o resolución final debe incluir determinaciones de hecho y las conclusiones de derecho que fundamentan la adjudicación y la advertencia del derecho a solicitar una reconsideración o revisión, según sea el caso.[8]

En vista de lo anterior, las órdenes y resoluciones interlocutorias no serán directamente revisables, sino que podrán ser "objeto de un señalamiento de error en el recurso de revisión de orden o resolución final". Sección 4.2 de la LPAUG, *supra.* La orden interlocutoria es "aquella acción de la agencia en un procedimiento adjudicativo que disponga de algún asunto meramente procesal". Sección 1.3 de la LPAUG, 3 LPRA sec. 9603(i).

Vemos que, por lo general, la revisión judicial se efectuará una vez se han adjudicado todas las controversias pendientes ante la agencia. *Fonte Elizondo v. F & R Const.*, 196 DPR 353, 358 (2016). A tenor de la doctrina de agotamiento de remedios, norma de autolimitación judicial, "los tribunales discrecionalmente se abstienen de revisar la actuación de una agencia hasta tanto la parte afectada por dicha actuación agote todos los remedios administrativos disponibles, de manera tal que la determinación administrativa refleje la postura final de la agencia". *Colón Rivera, et al. v. ELA*, 189 DPR 1033, 1057 (2013). Comúnmente, esta norma aplica a casos en los que la parte que "instó o tiene instada alguna acción ante una agencia u organismo administrativo, recurre a algún tribunal sin antes haber completado todo el trámite administrativo disponible". Íd. Entiéndase, esta norma se invoca

---

[8] La Regla 30 del Reglamento Núm. 9321, *supra,* también establece lo que debe contener una orden o resolución final.

para impugnar la acción judicial de una parte litigante que originalmente acudió o era parte de un procedimiento administrativo y que "recurrió luego al foro judicial, aunque aún tenía remedios administrativos disponibles". Íd.

A pesar de la utilidad de esta doctrina, no se trata de "un principio de aplicación inexorable". *S.L.G. Flores-Jiménez v. Colberg*, 173 DPR 843, 852 (2008). Al respecto, la Sección 4.3 de la LPAUG, 3 LPRA sec. 9673, dispone, en lo pertinente:

> El tribunal podrá relevar a un peticionario de tener que agotar alguno o todos los remedios administrativos provistos en el caso de que dicho remedio sea inadecuado, o cuando el requerir su agotamiento resultare en un daño irreparable al promovente y en el balance de intereses no se justifica agotar dichos remedios, [...], o cuando sea un asunto estrictamente de derecho y es innecesaria la pericia administrativa.

Si bien el Tribunal Supremo ha resuelto que el requisito de que este foro intermedio solo revise órdenes y resoluciones finales de una agencia es distinto a la doctrina de agotamiento de remedios, interpretó que "*ambas doctrinas tienen un alcance análogo y [...], de ordinario, ambas gozan de las mismas excepciones*". (Énfasis en el original.) Íd.

III.

En su único señalamiento de error, la CTS argumentó que la Oficial Examinadora del DS erró al resolver que, durante la vista adjudicativa, únicamente se podía presentar como evidencia lo que ya hubiese presentado durante la vista pública. Sostuvo que dicha determinación era contraria a las garantías procesales de la LPAUG.

De entrada, cabe reiterar que las cuestiones relativas a la jurisdicción de un tribunal para atender ciertas controversias se tienen que resolver con preferencia. Por consiguiente, resolvemos que, examinada la *Orden* recurrida a la luz del marco legal aplicable, carecemos de jurisdicción para atender la presente revisión judicial.

El Art. 4.006(c) de la Ley de la Judicatura, *supra*, la Regla 56 del Reglamento del Tribunal de Apelaciones, *supra*, y la Sección 4.2 de la LPAUG, *supra*, disponen claramente que este Foro únicamente posee competencia para revisar resoluciones, órdenes o dictámenes finales emitidos por organismos o agencias administrativas. Conforme a la norma jurisprudencial, se reputa final aquella determinación que culmina el procedimiento administrativo, resuelve todas las controversias sustantivas ante la agencia y no deja pendiente asunto alguno para adjudicación futura. *Comisionado Seguros v. Universal,* supra, pág. 29.

En el caso de autos, la *Orden* emitida por la Oficial Examinadora del DS el 1 de julio de 2025, y notificada el 8 de julio de 2025, resolvió una controversia probatoria relativa a la admisibilidad de ciertos documentos. Dicha orden no puso fin al procedimiento administrativo, no resolvió el fondo de la controversia sustantiva, ni adjudicó todas las reclamaciones ante la agencia. Por el contrario, se trata de una determinación interlocutoria dictada en el curso del trámite administrativo, cuya función fue únicamente excluir evidencia del récord.

Si bien es cierto que el Tribunal Supremo ha resuelto que al requisito de que este foro intermedio solo revise órdenes y resoluciones finales le aplican las mismas excepciones reconocidas a la doctrina de agotamiento de remedios, revisado el expediente concluimos que no concurren ninguna de estas excepciones que justifique atender en esta etapa la orden interlocutoria recurrida. No surge que el remedio administrativo resulte inadecuado, que la recurrente enfrente un daño irreparable, ni que la controversia planteada consista en un asunto estrictamente de derecho que haga innecesaria la pericia administrativa. En vista de lo anterior, y dado que nuestra jurisdicción no se extiende a la revisión de órdenes

interlocutorias emitidas por agencias administrativas, procede desestimar el recurso presentado por falta de jurisdicción.

IV.

Por los fundamentos antes expuestos, declaramos No Ha Lugar la solicitud de auxilio de jurisdicción y ***desestimamos*** el recurso por falta de jurisdicción.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones