Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| **SHARON MARIE NADAL RODRÍGUEZ**<br><br>Apelante<br><br>v.<br><br>**JUNTA DE RESIDENTES Y PROPIETARIOS DE SANTA RITA 3, CORP, LUIS ALMODOVAR RIOS, LUIS ZENGOTITA RODRIGUEZ**<br><br>Apelados | **TA2025AP00447** | ***CERTIORARI***<br>Procedente del Tribunal de Primera Instancia, Sala Superior de **Ponce**<br><br>Caso Núm. **JD2025CV00510**<br><br>Sobre: Injunction (Entredicho Provisional, Injunction Preliminar y Permanente), Sentencia Declaratoria |

Panel integrado por su presidente, el Juez Sánchez Ramos, la Jueza Romero García y el Juez Pérez Ocasio

Pérez Ocasio, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 28 de enero de 2026.

Comparece ante nos Sharon Nadal Rodríguez, en adelante, Nadal Rodríguez o apelante, solicitando que revisemos la *"Sentencia"* dictada por el Tribunal de Primera Instancia, Sala Superior de Ponce, en adelante, TPI-Ponce, notificada el 15 de septiembre de 2025. En la misma, el Foro Apelado desestimó con perjuicio los recursos de interdicto y sentencia declaratoria solicitados por la apelante.

Por los fundamentos que expondremos a continuación, *confirmamos* el dictamen apelado.

## I.

En el Municipio de Juana Díaz ubica la Urbanización Santa Rita III. Aunque la misma originalmente no contaba con control de acceso, *en el año 2004*, la Legislatura Municipal de Juana Díaz emitió la Resolución Núm. 099, Serie 2003-2004, en la que *endosó*

*la instalación de un sistema de control de acceso en la misma.*[1] Así, el 25 de marzo de 2009, la urbanización en cuestión recibió el permiso de uso de la Administración de Reglamentos y Permisos del Municipio de Ponce.[2]

Ahora bien, Nadal Rodríguez adquirió de unos primeros propietarios la residencia #1808 de la Urbanización Santa Rita, mediante Escritura Pública de Compraventa Núm. 11, el 17 de noviembre de 2017.[3] Según las alegaciones de las partes, unos meses más tarde, siendo el 28 de enero de 2018, se celebró una Asamblea de residentes y propietarios de la Urbanización Santa Rita III. En la misma, se les informó a los residentes el resultado de una encuesta realizada a los ciento treinta (130) residentes que se lograron contactar. Estos expresaron estar de acuerdo con poner en funcionamiento el existente sistema de control de acceso, que al momento, se encontraba averiado. Además, se estableció una cuota mensual de veinte dólares ($20.00), pero la apelante no estuvo de acuerdo con ella. Esta cuota fue designada para recaudar los fondos necesarios para la compra o reparación del sistema de control de acceso.[4] Surge que la apelante realizó el pago mensual estipulado durante los meses de febrero a junio del año 2018.[5]

Más adelante, el 6 de mayo de 2018, hubo una segunda Asamblea de residentes en la que se les informó que el sistema de control de acceso actual estaba obsoleto y las recomendaciones estructurales que hizo un Ingeniero. Así, se les mostró un "croquis" sobre cómo se relocalizarían los portones. También, ratificaron la cuota mensual de veinte dólares ($20.00) con el fin de continuar recaudando los fondos necesarios para comprar equipos nuevos,

---

[1] SUMAC, Entrada Num. 1, Anejo 3.
[2] SUMAC, Entrada Núm. 1, Anejo 9.
[3] SUMAC, Entrada Núm. 1, Anejo 1.
[4] SUMAC, Entrada Núm. 1.
[5] SUMAC, Entrada Núm. 15, Anejo 5.

reconstruir el área de los portones e integrar un sistema de *tele-entry* y un tercer portón de acceso con el uso de sellos.[6]

Por otro lado, el 10 de septiembre de 2018, se instituyó la Junta de Residentes y Propietarios Santa Rita 3 Corp., en adelante, Junta o apelado, en el Departamento de Estado de Puerto Rico.[7] Posteriormente, el 24 de abril de 2021, luego de haber sido aprobado por una mayoría de ciento ochenta (180) residentes de un total de ciento noventa y cinco (195), se cerró la Urbanización Santa Rita III.[8]

El 4 de noviembre de 2022, la Junta contrató los servicios profesionales de Mynnette Feliciano Rodríguez como Administradora.[9] Esta última suscribió un *"Acuerdo de Entrega Llaves de Acceso Peatonal"* con Nadal Rodríguez el 28 de septiembre de 2023. En el mismo, se hizo constar que se le entregaron dos (2) llaves para acceder los portones peatonales. Con respecto a los sellos, el acuerdo dispone que la apelante recibiría dos (2) sellos gratuitos para entrar a la urbanización.[10]

Sin embargo, el 4 de agosto de 2025, Nadal Rodríguez presentó una *"Demanda y Petición de Interdicto Permanente y Sentencia Declaratoria"* contra la apelada.[11] En la misma, solicitó que el Foro Primario ordenara a la Junta a permitirle el acceso a su residencia usando los sellos de residentes. Adujo que ella no autorizó el sistema de control de acceso, por lo que no está obligado a costearlo.

Por su parte, surge del expediente que, previo a hacer alegación responsiva, el apelado le cursó a Nadal Rodríguez una factura de mil trescientos cuarenta dólares ($1,340.00) en

---

[6] SUMAC, Entrada Núm. 15, Anejo 6.
[7] SUMAC, Entrada Núm. 1, Anejo 5.
[8] SUMAC, Entrada Núm. 1, Anejo 6.
[9] SUMAC, Entrada Núm. 15, Anejo 4.
[10] SUMAC, Entrada Núm. 1, Anejo 7.
[11] SUMAC, Entrada Núm. 1.

concepto de cuotas atrasadas.[12] Luego, el 22 de agosto de 2025, presentó su *"Oposición a Sentencia Declaratoria, Entredicho Privisional, Injunction Preliminar y Permanente".*[13] En síntesis, arguyó que a la apelante no se le ha negado el acceso a su residencia, ya que esta ingresa a la misma utilizando el sistema *tele-entry*. Explicó, además, que el uso de sellos está reservado para los residentes que mantienen su cuota al día. El apelado propuso ocho (8) determinaciones de hechos para estipular, por lo que el 25 de agosto de 2025, el TPI-Ponce ordenó a las partes a presentar moción con hechos estipulados,[14] estipulaciones de prueba documental y la posibilidad de alcanzar una transacción para el 26 de agosto de 2025.[15] Adicionalmente, advirtió que, de haber controversias en los hechos, las partes debían preparase para una vista evidenciaria el 28 de agosto de 2025.

En cumplimiento de orden, la Junta y Nadal Rodríguez presentaron una moción conjunta en la que estipularon los siguientes hechos:

> 1. Que la [Junta] es una corporación creada para el mantenimiento y desarrollo económico, social y comunitario de la Urbanización Santa Rita III en Juana Díaz. Puerto Rico con número de incorporación 415435 y fecha de incorporación 10 de septiembre de 2018.
> 2. Que la Sra. Sharon M. Nadal Rodríguez, es mayor de edad, propietaria de la residencia #1808 (solar 4-JJ) Calle Santa Bárbara de la Urbanización Santa Rita III situada en Juana Díaz, Puerto Rico.
> 3. Que la Sra. Sharon M. Nadal Rodríguez firmó la Escritura de Compraventa de dicha propiedad el 17 de noviembre de 2017.
> 4. Que en la Escritura de Compraventa no aparece ninguna condición, servidumbre o gravamen relacionada a la restricción de control de acceso. Al momento de adquirir la propiedad, no existía el control de acceso, los portones no

---

[12] SUMAC, Entrada Núm. 15, Anejo 8.
[13] SUMAC, Entrada Núm. 15.
[14] SUMAC, Entrada Núm. 15.
[15] SUMAC, Entrada Núm. 16.

estaban en funciones y permanecían abiertos en todo momento.

5. En el Estudio de Título emitido por el Registrador de la Propiedad, no aparece gravamen o servidumbre que se refiera a que la urbanización se afectara por el sistema de control de acceso.

6. Que el Municipio de Juana Díaz autorizó mediante Resolución 121 del 2004- 2005 del 16 de marzo del 2005 el Control de Acceso de la urbanización de referencia.

7. Que la demandante hizo siete (7) pagos de cuota mediante los recibos 013, 027, 028, 0048, 0049 y 0653(pago doble) hasta el 27 de septiembre de 2018.

8. Que el 20 de agosto de 2025 se le curso a la demandante una factura al cobro por cuotas de mantenimiento atrasadas que totalizan la cantidad de $1,340.00.

9. Que a la Sra. Sharon M. Nadal, quien es titular, accede a su hogar por medio de *tele-entry*, distinto a otros residentes que entran a la urbanización utilizando un sello adherido al vehículo que controla el portón.

Por no haberse logrado un acuerdo, y la existencia de controversia en los hechos del caso, el 28 de agosto de 2025 se celebró una *Vista de Injunction Preliminar* en la que testificaron la apelante e Hiram Zengotita Rodríguez, quien es Secretario de la Junta.[16]

Así las cosas, el 15 de septiembre de 2025 el TPI-Ponce emitió una *"Sentencia"* en la que declaró *"No Ha Lugar"* la demanda de Nadal Rodríguez.[17] El Foro Apelado justipreció que, a la luz del derecho aplicable, la apelante adquirió su residencia en la Urbanización Santa Rita III cuando el Municipio de Juana Díaz ya le había autorizado el sistema de control de acceso. Por ello, esta venía obligada a sufragar la cuota mensual si quería obtener acceso a su propiedad con los sellos.

---

[16] Transcripción de la prueba oral, recibida el 11 de noviembre de 2025.
[17] SUMAC, Entrada Núm. 21.

El 19 de septiembre de 2025 la apelante presentó una *"Moción Solicitando Reconsideración"* ante el TPI-Ponce,[18] que fue declarada *"No Ha Lugar"* el 22 de septiembre de 2025.[19]

Inconforme, Nadal Rodríguez recurrió ante esta Curia mediante un *"Recurso de Apelación"* en el que hizo los siguientes señalamientos de error:

> **PRIMER ERROR:** Erró el TPI al determinar que, al ser la apelante una segunda adquiriente, estaba obligada al pago de las cuotas de control de acceso, sin analizar que la base legal por la cual se autorizó dicho control de acceso no procede.
>
> **SEGUNDO ERROR:** Erró el Tribunal de Primera Instancia al concluir que los pagos realizados por la apelante a una Junta de Residentes anterior no incorporada, así como su declaración verbal al Secretario de la Corporación demandada – efectuada incluso antes de adquirir la propiedad –, constituían elementos esenciales de un contrato mediante el cual la apelante se obligaba a adherirse a los términos de la cuota establecida para el control de acceso. Tal determinación es contraria a derecho, por cuanto no existió contrato escrito ni manifestación expresa de consentimiento por parte de la apelante aceptando las condiciones impuestas por la Junta de Residentes.
>
> **TERCER ERROR:** Erró el Tribunal de Primera Instancia al determinar que las partes estipularon que la demandante adeuda la cantidad de $1,340 a la Junta por la cuota de mantenimiento.
>
> **CUARTO ERROR:** Erró el Tribunal de Primera Instancia al determinar que no constituye un discrimen el hecho de que la apelante ingrese a la urbanización de forma distinta a aquellos que pagan la cuota de mantenimiento.
>
> **QUINTO ERROR:** Erró el Tribunal de Primera Instancia al invalidar el acuerdo suscrito por la exadministradora, bajo el fundamento incorrecto de que esta no tenía facultad para obligar a la Junta, ignorando que dicha funcionaria actuó como representante de la Junta de Directores, conforme al propio texto del documento.

---

[18] SUMAC, Entrada Núm. 23.
[19] SUMAC, Entrada Núm. 24.

El 21 de octubre de 2025 emitimos una *"Resolución"* concediéndole tres (3) días a la apelante para informar si se proponía presentar la transcripción de la prueba oral. Mediante moción, el 23 de octubre de 2025 Nadal Rodríguez confirmó su intención de así hacerlo. Por ello, el 27 de octubre de 2025 emitimos otra *"Resolución"* con las instrucciones pertinentes a la presentación y estipulación de las partes sobre la prueba oral.

El 11 de noviembre de 2025, la apelante presentó la transcripción de la vista celebrada en el caso de marras. Sin objeción de la parte apelada, la referida prueba oral fue acogida por este Tribunal, y el 21 de diciembre de 2025, la parte apelada presentó su alegato.

Perfeccionado el recurso de autos, y evaluada la prueba oral, nos encontramos en posición de resolver.

**II.**

**A. Apelación Civil**

Las Reglas de Procedimiento Civil de Puerto Rico se desenvuelven en un orden lógico, natural y armonioso entre sí. Este orden queda demostrado en las distintas etapas de un litigio, entiéndase las alegaciones, mociones, descubrimiento de prueba, vista evidenciaria, sentencia, reconsideración, *apelación,* y sus efectos escalonados. Cada etapa se sirve de la anterior y se proyecta, entonces, para la próxima. *Vega v. Alicea,* 145 DPR 236, 238 (1998).

La etapa de la *apelación* se perfecciona con la presentación oportuna de un escrito conforme a las formalidades establecidas en nuestro estado de derecho, que incluye su debida notificación a las partes. El recurso de apelación es aquel que se presenta ante un foro de mayor jerarquía cuando se solicita la revisión de una sentencia, o un dictamen final, emitido por el Foro de Primera Instancia. Regla 52.1 y 52.2 de Procedimiento Civil, 32 LPRA, Ap.

VIII, R. 52; *Freire Ruiz et al. v. Morales, Hernández*, 2024 TSPR 129, 215 DPR ___ (2024); *González Pagán v. SLG Moret-Brunet*, 202 DPR 1062, 1070-1071 (2019). Véase, además, R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta Ed., San Juan, Ed. Lexis Nexis, 2017, pág. 519.

La apelación no es un recurso discrecional como en los casos de *certiorari*. Una vez se cumpla con los requisitos jurisdiccionales y de perfeccionamiento del recurso, el Tribunal de Apelaciones viene obligado a atender el asunto y resolverlo en sus méritos, de forma fundamentada. *Soc. de Gananciales v. García Robles*, 142 DPR 241, 252 (1997). En ese sentido, se reconoce que existe el derecho estatutario para acudir en apelación ante el Tribunal de Apelaciones, cuestionando toda sentencia final emitida por el Tribunal de Primera Instancia. *Silva Barreto v. Tejada Martell*, 199 DPR 311, 317 (2017). Regla 13(A) del Reglamento del Tribunal de Apelaciones, supra, pág. 22; Art. 4.006(a) Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003, Ley Núm. 201-2003, 4 LPRA sec. 24y.

Al revisar una determinación de un foro de menor jerarquía, los tribunales revisores tenemos la tarea principal de auscultar si se aplicó correctamente el derecho a los hechos particulares del caso. Como regla general, los foros apelativos no tenemos facultad para sustituir las determinaciones de hechos del tribunal de instancia con nuestras propias apreciaciones. *W.M.M. P.F.M., et al. v. Colegio et al.*, 211 DPR 871, 902-903 (2023); *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770-771 (2013); *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007). De manera que, si la actuación del tribunal no está desprovista de base razonable, ni perjudica los derechos sustanciales de una parte, debe prevalecer el criterio del juez de instancia a quien corresponde la dirección del

proceso. *Bathia Gautier v. Gobernador*, 199 DPR 59, 182 (2017); *Sierra v. Tribunal Superior*, 81 DPR 554, 572 (1959).

### B. Ley de Control de Acceso Vehicular

La Ley de Control de Acceso Vehicular, en adelante, Ley de Control de Acceso, Ley Número 21 de 20 de mayo de 1987, 23 LPRA sec. 64 *et. seq.,*[20] tuvo el propósito de autorizar a determinadas comunidades a "controlar la entrada a sus calles dentro del área residencial" y permitirles "participar en la lucha contra el crimen al establecer mecanismos que controlen los accesos", disminuyendo de este modo "la labor de vigilancia, ya sobrecargada, que presta la Policía de Puerto Rico". Exposición de Motivos de la Ley de Control de Acceso, *supra.* Véase, además, *Caquías v. Asoc. Res. Mansiones Río Piedras*, 134 DPR 181, 186-187 (1993).

Además, la misma facultaba a los municipios a "conceder permisos para el control del tráfico de vehículos de motor y del uso público de las vías públicas en paseos peatonales, calles, urbanizaciones y comunidades residenciales públicas o privadas, con un solo acceso de entrada y salida o que tengan más de un acceso de entrada o salida pero que ninguna de sus vías públicas se use para la entrada o salida de otra calle, urbanización o comunidad que no haya solicitado el control de acceso". Ley de Control de Acceso, *supra,* sec. 64-1. Véase, además, *Asoc. Ctrl. Acc. C. Maracaibo v. Cardona,* 144 DPR 1, 44 (1997).

Con relación a "[c]ualquier urbanizador, desarrollador de terrenos o constructor de urbanización, lotificación o lotificación simple", la Sección 5 de Ley de Control de Acceso, *supra,* sec. 64b-1, establece que "antes de vender, de haber concedido una opción

---

[20] Esta ley estaba vigente al momento de los hechos y para la fecha de la presentación de la causa de acción. Dicho estatuto fue derogado en virtud de la Ley Núm.107-2020, mejor conocida como "Código Municipal de Puerto Rico", según enmendado, el cual regula en su Libro II sobre servicios municipales en el Capítulo I lo relacionado al control de acceso en las urbanizaciones.

de compra o de cualquier otra forma haberse comprometido a vender una vivienda, solar, lote o terreno de los que se propone desarrollar o lotificar" estos podrán "establecer en éste los controles de acceso". Esto último sujeto al cumplimiento con las disposiciones de la Ley de Control de Acceso, *supra,* y las normativas municipales al respecto.

Por otro lado, la Ley de Control de Acceso Vehicular, *supra*, faculta a las asociaciones de residentes para que, luego de organizadas y registradas en el Departamento de Estado como instituciones sin fines de lucro, se encarguen de la administración y el mantenimiento de los sistemas de control de acceso. Ley de Control de Acceso, *supra*, 64a(a) y 64d-3(a). Ello incluye la facultad de imponer y cobrar una cuota, y reclamar la deuda a un propietario por este concepto por la vía judicial. *Íd.*

Importante por demás, el estatuto en cuestión enumera de manera taxativa las personas que están obligadas a contribuir con los costos de mantenimiento del control de acceso. En su parte pertinente, la Sección 10 de la Ley de Control de Acceso, *supra,* sec. 64d-3, reza de la siguiente manera:

> [...]
> La obligación de pago recaerá en los siguientes propietarios:
>
> 1) Los propietarios de fincas en las que se haya inscrito la autorización o permiso bajo el procedimiento establecido en la sec. 64d-1 de este título.
> 2) Los propietarios que autorizaron la solicitud para establecer el control de acceso, según fue implantado.
> 3) ***Todo propietario adquirente de una finca, ubicada en una urbanización, calle o comunidad que ha sido autorizada por el municipio correspondiente para controlar el acceso o que, a la fecha de la compraventa, se encontrara en trámite de obtener el consentimiento de tres cuartas (3/4) partes de los propietarios y así conste en actas.***
> 4) Cuando la solicitud fue hecha por el urbanizador, desarrollador o constructor, el pago de cuota será

obligatorio para toda persona que advenga dueño de inmueble.

5) Los propietarios que no autorizaron expresamente el establecimiento del sistema de control de acceso, pero que en fecha posterior se comprometieron al pago mediante contrato escrito.

(Énfasis suplido).

De modo que, entre las personas forzadas a contribuir con el costo de mantenimiento del control de acceso, se encuentran los adquirentes de una finca ubicada en una urbanización que ha sido autorizada para controlar el acceso. Por tanto, quedan automáticamente obligados a contribuir con los costos de mantenimiento aquellos adquirentes que al momento de la compraventa exista un sistema de control de acceso o se haya comenzado el trámite para obtener el consentimiento de los propietarios para ello. Sobre estos adquirientes, nuestro más Alto Foro ha expresado "solo a estos se les puede exigir, *de modo automático*, el pago de gastos de mantenimiento sin oportunidad para oponerse al control de acceso". *Residentes Sagrado Corazón v. Arsuaga,* 160 DPR 289, 320-321 (2003).

### C. Apreciación de la prueba oral

La Regla 42.2 de Procedimiento Civil, supra, dispone en cuanto a las determinaciones de hechos basadas en *testimonio oral* que "no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de las personas testigos". Cónsono con la antedicha disposición reglamentaria, ha sido norma reiterada que "[e]n ausencia de error, prejuicio o parcialidad, los tribunales apelativos no intervendr[emos] con las determinaciones de hechos, con la apreciación de la prueba ni con la adjudicación de credibilidad que efectúe el Tribunal de Primera Instancia". *Ramírez Ferrer v.*

*Conagra Foods PR*, 175 DPR 799, 811 (2009). Véase, además, *Barreto Nieves et al. v. East Coast,* 213 DPR 852, 889 (2024); *SLG Rivera-Pérez v. SLG Díaz-Doe et al.,* 207 DPR 636, 657 (2021). *Torres Vélez v. Soto Hernández,* 189 DPR 972, 990 (2013). Entretanto, precisa recordar que las decisiones judiciales están revestidas de una presunción de corrección. *Vargas v. González,* 149 DPR 859, 866 (1999).

Ahora bien, lo anterior no implica que las determinaciones del foro a *quo* no sean revisables o inmutables. Aunque respetables las determinaciones del juzgador de hechos, estas "no tienen credenciales de inmunidad frente a la función revisora de este Tribunal". *Vda. de Morales v. De Jesús Toro,* 107 DPR 826, 829 (1978). La intervención de un foro apelativo con la evaluación de la prueba testifical procederá "en casos en los que luego de un análisis integral de la prueba, nos cause una insatisfacción o intranquilidad de conciencia tal que estremezca nuestro sentido básico de justicia". *Sucn. Rosado v. Acevedo Marrero,* 196 DPR 884, 918 (2016). Véase, además, *Rivera Menéndez v. Action Service,* 185 DPR 431, 444 (2012).

Igualmente podemos dejar sin efecto las determinaciones de hechos realizadas por el foro de primera instancia, siempre que "del examen de la totalidad de la evidencia [quedemos] definitiva y firmemente convencido[s] que un error ha sido cometido, como es el caso en que las conclusiones de hecho[s] están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida". *Maryland Casualty Co. v. Quick Const. Corp.,* 90 DPR 329, 336 (1964). Recientemente, nuestro más Alto Foro expresó que "el error manifiesto ocurre cuando el foro apelativo queda convencido de que se cometió un error, a pesar de que haya evidencia que sostenga las conclusiones de hecho del tribunal, porque existe un conflicto entre las conclusiones y el balance más

racional, justiciero y jurídico de la totalidad de la evidencia recibida". *Ortiz Ortiz v. Medtronic,* 209 DPR 759, 779 (2022).

Como parte de la naturaleza inherente de este foro apelativo intermedio, no celebramos juicios plenarios, ni presenciamos el testimonio oral de los testigos, ni dirimimos credibilidad, sino que contamos, de ordinario, con "récords mudos e inexpresivos". *SLG Rivera Carrasquillo v. A.A.A.,* 177 DPR 345, 356 (2009). Aunque este Tribunal no tiene la facultad de evaluar el lenguaje corporal, expresiones o demás elementos subjetivos, sí nos encontramos en la misma posición del foro primario para evaluar la prueba documental o pericial que fundamentan las determinaciones de hecho. *Sucn. Rosado v. Acevedo Marrero,* supra, pág. 918; *González Hernández v. González Hernández,* 181 DPR 746, 777 (2011). Para que proceda la revocación de un dictamen realizado por el foro primario, la parte "apelante tiene que señalar y demostrar la base para ello". Quien "cuestione una determinación de hechos realizada por el foro primario debe señalar el error manifiesto o fundamentar la existencia de pasión, perjuicio o parcialidad". *SLG Rivera Carrasquillo v. A.A.A.,* supra, pág. 356.

### III.

La apelante recurre ante esta Curia solicitando que revisemos la *"Sentencia"* del TPI-Caguas en la que el Foro Primario declaró *"No Ha Lugar"* la solicitud de interdicto permanente y sentencia declaratoria contra la Junta. En sus errores aduce que, en síntesis, el Foro Apelado se equivocó al determinar que Nadal Rodríguez estaba obligada a pagar la cuota mensual para tener derecho a los sellos del control de acceso. Por su estrecho vínculo, atenderemos los errores uno, dos, cuatro y cinco en conjunto.

En una escueta discusión de estos errores, la apelante arguye que el permiso que otorgó el Municipio de Juana Díaz para la implantación del sistema de control de acceso en la

Urbanización Santa Rita III no fue conforme a derecho. También sostiene que el Foro Primario incurrió en una apreciación errónea de la prueba al concluir que Nadal Rodríguez quedó contractualmente obligada al pago de la cuota mensual, y que el acceso mediante *tele-entry* – y no con el uso de los sellos – es discriminatorio. *No le asiste la razón.*

La apelante argumenta que la precitada Sección 5 de la Ley de Control de Acceso, supra, sec. 64b-1, impide que se establezca un sistema de control de acceso en una urbanización en la que se haya vendido un solar, una vivienda o terreno. Justipreciamos que esto es una interpretación errónea del estatuto. Es nuestra apreciación que la sección en cuestión se dirige a los urbanizadores que desarrollan proyectos de vivienda y lotificación, indicando que estos "podrá[n]" establecer sistemas de control de acceso en sus proyectos antes de vender u opcionar un solar, una vivienda o terreno. Interpretar lo contrario, según sostiene Nadal Rodríguez, sería concluir que la venta de una casa o solar, en cualquier desarrollo de vivienda, impediría que estas se organicen para controlar el acceso.

Con relación al argumento de la apelante sobre la validez de las actuaciones de la extinta Asociación, o lo contractualmente vinculante de sus comunicaciones con la Junta y del acuerdo suscrito con la ex administradora de la Urbanización Santa Rita III, son redundantes. Esto, ya que la responsabilidad de Nadal Rodríguez de sufragar la cuota mensual es una obligación de carácter estatutario. Como expresáramos previamente, el derecho vigente al momento de los hechos de este caso proviene de la Ley de Control de Acceso, *supra*, y la jurisprudencia. Según reseñáramos, el mencionado estatuto establece una lista taxativa de las circunstancias que obligan a un propietario a pagar esta cuota mensual. El tercero de estos apunta a quienes adquieren

una propiedad en una urbanización que ya cuenta con control de acceso o que se encuentra haciendo las gestiones para conseguir la autorización de una tercera parte de los propietarios.

Según surge de los documentos en el expediente, la Urbanización Santa Rita III obtuvo el permiso municipal para establecer un control de acceso en el año 2004. Esto último, es un hecho estipulado entre las partes. Por su parte, la apelante aduce que en su contrato de compraventa ni en la documentación del registro surge un gravamen que aluda a la responsabilidad del mantenimiento del control de acceso, por lo que no quedó obligada al pago del mismo al adquirir la propiedad. Sin embargo, ello no era necesario para que Nadal Rodríguez adviniera obligada a la cuota mensual. La precitada disposición de la Ley de Control de Acceso no requiere que esa obligación quede establecida mediante acuerdo escrito, o en la documentación registral. Tan es así, que nuestra jurisprudencia ha expresado que los propietarios que recaen en estas circunstancias son los únicos que quedan automáticamente obligados a cumplir con la cuota mensual del mantenimiento, aun cuando no hayan tenido la oportunidad de oponerse al sistema de control de acceso.

En cuanto a su reclamación respecto al alegado discrimen, la apelante no nos colocó en posición para evaluar su argumento. Nadal Rodríguez no se refirió a ninguna disposición de derecho que sostuviera su contención, por lo que este Tribunal opta por no recibirla.

En su tercer señalamiento de error, la apelante sostiene que el TPI-Caguas se equivocó al determinar que las partes estipularon que Nadal Rodríguez tenía una deuda de mil trescientos cuarenta dólares ($1,340.00) con la apelada. *Le asiste la razón.*

El Foro Primario les solicitó a las partes que sometieran un escrito con estipulaciones. La octava estipulación indicaba que "el

20 de agosto de 2025 se le curso a la demandante una factura al cobro por cuotas de mantenimiento atrasadas que totalizan la cantidad de $1,340.00". Durante el litigio y el juicio Nadal Rodríguez negó la responsabilidad de pagar la cuota de mantenimiento, por lo que rechazó la deuda que se le facturó.[21] Más aun, al final del dictamen apelado, el TPI-Caguas desestima la causa de acción contra la Junta y "deja a las partes la reclamación del cobro de la cuota de mantenimiento en una reclamación independiente de ésta".[22] Por todo lo cual, concluimos que el Foro Primario erró al establecer como la determinación de hecho número 11 que "[l]as partes estipularon que la demandante adeuda la cantidad de $1,340 a agosto de 2025 por la cuota de mantenimiento".[23]

## IV.

Por los fundamentos antes expuestos, *confirmamos el dictamen apelado en su totalidad.*

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones

---

[21] Transcripción de la prueba oral, pág. 9.
[22] SUMAC, Entrada Núm. 21.
[23] SUMAC, Entrada Núm. 21.